Judge BAKER
delivered the opinion of the Court.
A general court-martial composed of officer and enlisted members convicted appellant, contrary to his pleas, of two specifications of attempted forcible sodomy with a child, indecent acts with a child, and obstruction of justice, in violation of Articles 80 and 134, Uniform Code of Military Justice (UCMJ), 10 USC §§ 880 and 934, respectively. He was sentenced to a dishonorable discharge, confinement for twenty years, total forfeitures, and reduction to grade E-l. The convening authority approved the findings and sentence as adjudged. The court below set aside the finding of guilty of obstruction of justice, dismissed that specification, affirmed the remaining findings, and upon reassessment, affirmed the sentence.
This Court granted review of the following issue:
WHETHER THE MILITARY JUDGE ABUSED HIS DISCRETION BY VIOLATING THE MANDATE TO GRANT CHALLENGES FOR CAUSE LIBERALLY WHEN HE WRONGLY DENIED THE DEFENSE’S CHALLENGE FOR CAUSE AGAINST A PANEL MEMBER WHO WAS THE SUPERVISOR/RATER FOR SIX OTHER MEMBERS OF THE PANEL.
For the reasons set forth, we find that the military judge abused his discretion when he denied the challenge for cause against Colonel (COL) Williams. Thus, we reverse.
Background
At trial, appellant elected to be tried by a panel of both officer and enlisted members. Ten members reported to the court-martial. COL Williams, a brigade commander, was the senior member.
During the military judge’s prehminary voir dire of the members, the following information was revealed:
MJ: Is any panel member in the rating chain, supervisory chain, or chain of command of any other panel member? If so, raise your hand.
Colonel Williams, who’s under your command or rating chain?
MEM [COL WILLIAMS]: [Lieutenant] Colonel Mereness is a battalion commander for me, [Lieutenant] Colonel Rogers is a battalion commander for me, Major Gonsalves is a battalion XO [executive officer] for me. [Lieutenant] Colonel Hough is my forward support battalion commander and the first sergeant down there at the end is also in my chain.
MJ: First Sergeant Waters. Who else?
*174 MEM [COL WILLIAMS]: Command Sergeant Major Arroyo also is in my BCT [Brigade].
Civilian defense counsel attempted to exercise a challenge for cause to remove COL Williams, based on implied bias, because of his supervisory position over six of the panel members. After questioning the members, the military judge denied the challenge for cause, stating:
MJ: Well, if this were some sort of military offense that occurred in the 2nd Brigade [COL Williams’s Brigade], I might look at it differently. But for a case of this type, I think the panel members can each approach this with an individual voice and consideration. They’ve all indicated that they could express their opinions’ freely and openly and that they would not be inhibited or unduly influenced by any superior.
Your challenge for cause is denied.
Defense counsel subsequently exercised his peremptory challenge against COL Williams and stated that, but for the military judge’s denial of his challenge for cause against COL Williams, he would have peremptorily challenged Major Gonsalves.
Discussion

Testing Impartiality

As a matter of due process, an accused has a constitutional right, as well as a regulatory right, to a fair and impartial panel. United States v. Mack, 41 MJ 51, 54 (CMA 1994); see RCM 912(f)(l)(N), Manual for Courts-Martial, United States (2000 ed.).[1] Indeed, “[i]mpartial court-members are a sine qua non for a fair court-martial.” United States v. Modesto, 43 MJ 315, 318 (1995). That is not to say that an accused has a right to the panel of his choice, just to a fair and impartial panel. Id. The UCMJ and common law incorporate a number of methods to validate this right, including voir dire, the challenge for cause, and the peremptory challenge.
In this case, appellant takes issue with the judge’s application of, or to be more precise, his failure to apply his authority to remove a potential member for cause. RCM 912(f)(l)(N) provides that “[a] member shall be excused for cause whenever it appears that the member ... [s]hould not sit as a member in the interest of having the court-martial free from substantial doubt as to legality, fairness, and impartiality.” In furtherance of this principle, this Court has determined that a member shall be excused in cases of actual bias or implied bias. United States v. Napoleon, 46 MJ 279, 282-83 (1997) ; United States v. Minyard, 46 MJ 229, 231 (1997); United States v. Daulton, 45 MJ 212, 217 (1996); United States v. Harris, 13 MJ 288, 292 (CMA 1982). Further, “we have urged a ‘liberal’ view on granting challenges for cause.” United States v. Dale, 42 MJ 384, 386 (1995). Thus, “[m]ilitary judges must follow the liberal-grant mandate in ruling on challenges for cause....” Daulton, supra, quoting United States v. White, 36 MJ 284, 287 (CMA 1993).
“The test for actual bias is whether any bias ‘is such that it will not yield to the evidence presented and the judge’s instructions.’” Napoleon, 46 MJ at 283, quoting United States v. Reynolds, 23 MJ 292, 294 (CMA 1987). “While actual bias is reviewed through the eyes of the military judge or the court members, implied bias is reviewed under an objective standard, viewed through the eyes of the public.” Id., quoting Daulton, supra. The focus “is on the perception or appearance of fairness of the military justice system.” Dale, 42 MJ at 386. At the same time, this Court has suggested that the test for implied bias also carries with it an element of actual bias. Thus, there is implied bias when “most people in the same position would be prejudiced.” United States v. Armstrong, 54 MJ 51, 53-54 (2000), quoting United States v. Warden, 51 MJ 78, 81 (1999); United States v. Smart, 21 MJ 15, 20 (CMA 1985). This Court has also determined that when there is no actual bias, “implied bias should be invoked rarely.” United States v. Rome, 47 MJ 467, 469 (1998).
*175 Given the factual underpinning for testing actual bias, we review a military judge’s findings regarding actual bias for an abuse of discretion. Napoleon, 46 MJ at 283. On the other hand, issues of implied bias, which entail both factual inquiry and objective application of legal principle, are reviewed under a less deferential standard. Armstrong, 54 MJ at 54, quoting Warden, supra.

Implied Bias

In the case at hand, appellant did not, and does not, challenge the composition of his panel on the grounds of actual bias. These officers and senior enlisted personnel, who swore to defend the Constitution, stated to a federal judge that they would not be swayed by the Brigade Commander because he was their commanding, rating, or supervising officer. COL Williams stated that he would not expect any jury room deference given his position. Appellant does not challenge the veracity of these voir dire responses. Rather, defense counsel challenged on the grounds of implied bias, citing to this Court’s decision in Rome. Thus, in accord with this Court’s precedent on RCM 912 and implied bias, including Rome, Daulton, and Dale, the issue here is one of public perception and the appearance of fairness in the military justice system.
It is well settled that a senior-subordinate/rating relationship does not per se require disqualification of a panel member. Rome, 47 MJ at 469; White, 36 MJ at 287; United States v. Murphy, 26 MJ 454, 455 (CMA 1988), and 28 MJ 232 (CMA), cert. denied, 490 U.S. 1107, 109 S.Ct. 3159, 104 L.Ed.2d 1022 (1989); see Harris, 13 MJ at 292[2] However, beyond that principle, this Court has struggled to define the scope of implied bias, or perhaps just disagreed on what that scope should be. The dissent in Rome argued that this Court had adopted a Justice Potter Stewart — “I know it when I see it” — standard when it comes to implied bias. 47 MJ at 472. However, while this Court’s application of implied bias may evolve with case law, at its core remains a concern with public perception and the appearance of fairness in the military justice system.
In Murphy and Harris, this Court tested the presence of two and three members on panels that included their rating officers. In contrast, in this case the President of the panel and his subordinates comprised the two-thirds majority sufficient to convict, a factual scenario outside the margin of tolerance reflected in our case law. Thus, appellate review of this case neither requires application of per se principles nor rejection of Rome’s guidance that implied bias should be invoked rarely.
Where a panel member has a supervisory position over six of the other members, and the resulting seven members make up the two-thirds majority sufficient to convict, we are placing an intolerable strain on public perception of the military justice system. This is a contextual judgment. The President anticipated in the preamble to the Manual for Courts-Martial that judges would *176 need to carefully balance national security with individual rights in applying the UCMJ. That preamble states: “The purpose of military law is to promote justice, to assist in maintaining good order and discipline in the armed forces, to promote efficiency and effectiveness in the military establishment, and thereby to strengthen the national security of the United States.”
What is reasonable and fair from the public’s perception, as well as this Court’s judgment as to what is reasonable and fair, would be different in the case of national security exigency or operational necessity. In a particular case, operational needs may impact the availability of members of a command, thereby significantly limiting the pool from which potential members might be selected. Here, deployed units may have diminished the potential pool of members, but the Government failed to demonstrate that it was necessary for the Brigade Commander to serve on this panel. The record shows that there were at least two combat brigades at Fort Stewart at the time of trial, in addition to support elements, from which to select a qualified member in lieu of COL Williams.
In short, in this case, the Government has failed to demonstrate that operational deployments or needs precluded other suitable officers from reasonably serving on this panel, thus necessitating the Brigade Commander’s participation.
To address this issue from the standpoint of performance reports misses the point. With or without the prohibition against unlawful command influence under Article 37, UCMJ, 10 USC § 837, we reject the notion that officers and non-commissioned officers, who swear to uphold the Constitution, might breach that oath willfully in the deliberation room in an effort to influence a performance report. The American public should and does have great confidence in the integrity of the men and women who serve in uniform, including their integrity in the jury room.
However, public perception of the military justice system may nonetheless be affected by more subtle aspects of military life. An objective public might ask to what extent, if any, does deference (a.k.a. respect) for senior officers come into play? The public perceives accurately that military commissioned and non-commissioned officers are expected to lead, not just manage; to command, not just direct; and to follow, not just get out of the way. For lack of a more precise term, appellant’s trial defense counsel described this concern as creating “the wrong atmosphere.”[3] In this context, there is simply too high a risk that the public will perceive that the accused received something less than a jury of ten equal members, although something more than a jury of one.
We also disagree with the military judge’s suggestion that he might treat the question of implied bias differently in a case involving an offense particular to the military justice system, as opposed to one of child abuse. Implied bias undermines public confidence in the military justice system regardless of the offense.[4]
Whether one agrees with appellant that the panel would constitute a “brigade staff meeting” or not, we have no doubt that “viewed through the eyes of the public,” serious doubts about the fairness of the military justice system are raised when the senior member of the panel and those he commanded or supervised commanded a two-thirds majority of members that alone could convict the accused. This is not “knowing it when you see it,” or appellate judges attempting to extrapolate “public perceptions” from the bench. This is a clear application of law to fact, and illustrates well why this court recognizes a doctrine of implied bias, as well as one of actual bias, in interpreting ROM 912.
*177 For these reasons, the military judge abused his discretion when he failed to grant appellant’s challenge for cause against COL Williams.[5] Having found error, we must now test for prejudice.

Prejudice

Appellant preserved this issue for appeal by peremptorily challenging COL Williams and indicating that, but for the military judge’s denial of his challenge for cause, he would have used the peremptory challenge against another officer.
There is no constitutional right to a peremptory challenge. Ross v. Oklahoma, 487 U.S. 81, 88, 108 S.Ct. 2273, 101 L.Ed.2d 80 (1988); Armstrong, 54 MJ at 54. Therefore, if there is prejudice, its existence derives from the statutory and regulatory right to one peremptory challenge provided for in Article 41, UCMJ, 10 USC § 841, and RCM 912(g). This Court recently addressed the question of prejudice in Armstrong, where the appellant also removed an issue of implied bias through exercise of his one peremptory challenge. In Armstrong, this Court held that the availability of a peremptory challenge does not remove the prejudice arising from an erroneous ruling on a challenge for cause. Id. at 55.
Armstrong remains the law in the military. When a statute or rule confers a right greater than the Constitution, an accused is entitled to the benefit of that greater right, unless it conflicts with a higher source of law. Armstrong, 54 MJ at 55; United States v. Davis, 47 MJ 484, 485-86 (1998). Accordingly, even though COL Williams was excused from the panel by a peremptory challenge, the military judge’s denial of the challenge for cause against COL Williams prejudiced appellant’s right to exercise a peremptory challenge against another member of his choice. To say that appellant cured any error by exercising his one peremptory challenge against the offending member is reasoning that, if accepted, would reduce the right to a peremptory challenge from one of substance to one of illusion only,
Decision
Based on the foregoing, we hold that the military judge abused his discretion in denying the challenge for cause against COL Williams and that such error resulted in prejudice to appellant.
The decision of the United States Army Court of Criminal Appeals is reversed, and the findings of guilty and sentence are set aside. The record of trial is returned to the Judge Advocate General of the Army. A new trial may be ordered.

. This Manual provision is identical to the one in effect at the time of appellant's court-martial.

. Murphy and Harris both involve instances of multiple superior/subordinate relationships between members. In Murphy, the President of the court-martial was in the chain of command of two junior members and may have been required to sign as a rater for them if their senior officer was not present. Yet another member was the reporting official for one other member and a "reporting official once removed for a second member.” 26 MJ at 455. This Court held that the lower court erred because it established "a per se rule of disqualification for a senior member of the court-martial who writes or endorses an efficiency report of a junior member.” Id. In Harris, the President of the court "wrote or endorsed the fitness reports of three other members of the court.” 13 MJ at 292. Furthermore, the President worked with two of the victims of the appellant’s larcenies and talked about these larcenies with the victims before the trial. Finally this member, by virtue of his position, had an official interest in discouraging larcenies like the ones appellant had committed. This Court held that since the military judge relied only on the disclaimers made by the challenged member during voir dire, her decision to deny the challenge for cause was in error on the question of implied bias. Id. That the challenged member rated three other members was not the main factor. In his concurring opinion, Judge Cook noted that "[b]y far the most significant of the allegedly disqualifying factors cited was [the challenged member’s] professional relationship with two of the seven theft victims.” Id. at 293.

. Defense counsel stated: "And that’s just an awful lot of people who he influences. And if you take him off, you don't have — you kind of break up that number of superior/subordinate rating chain relationships____ It creates the wrong atmosphere — .” We agree. This is a different case without the presence of the brigade commander and six of his subordinates.

. We do not need to debate for the purpose of this appeal the implication that there is a qualitative difference between traditional military offenses, like desertion, and offenses committed by or against military personnel or their families, such as child abuse. We find it hard to imagine that a commander would not consider both types of offenses with equal gravity and concern.

. Senior Judge Sullivan renews his opposition to this Court's precedent regarding implied bias as an interpretive framework for applying RCM 912. Senior Judge Sullivan may disagree with the majority view that where the President of a panel commands or supervises a two-thirds majority of court members sufficient to convict, serious doubts about the fairness of military justice are raised, but that does not make the majority view ultra vires. The duty of judges is to say what the law is. Marbury v. Madison, 1 Cranch 137, 5 U.S. 137, 177, 2 L.Ed. 60 (1803).