UNITED STATES, Appellee

v.

Jon M. DOWNING, Airman First Class
U.S. Air Force, Appellant

No. 01-0602

Crim. App. No. 33953

_____

United States Court of Appeals for the Armed Forces

Argued November 28, 2001

Decided April 18, 2002

BAKER, J., delivered the opinion of the Court, in which GIERKE
and EFFRON, JJ., joined.  CRAWFORD, C.J., filed an opinion
concurring in part and in the result.  SULLIVAN, S.J., filed an
opinion concurring in the result.

Counsel

For Appellant:  Captain Kyle R. Jacobson (argued);
   Lieutenant Colonel Beverly B. Knott and Lieutenant
   Colonel Timothy W. Murphy (on brief).

For Appellee:  Captain Matthew J. Mulbarger (argued);
   Colonel Anthony P. Dattilo and Major Lance B. Sigmon (on
   brief); Captain Suzanne Sumner.


Military Judge:  W. Thomas Cumbie

THIS OPINION IS SUBJECT TO EDITORIAL CORRECTION BEFORE FINAL PUBLICATION

Judge BAKER delivered the opinion of the Court.

Consistent with his pleas, appellant was convicted of wrongful use of LSD on divers occasions, in violation of Article 112a, Uniform Code of Military Justice (UCMJ), 10 USC § 912a. A general court-martial composed of officer members sentenced him to a bad-conduct discharge. The convening authority approved the sentence as adjudged, and the court below affirmed. United States v. Downing, No. 33953 (A.F. Ct.Crim.App. April 9, 2001).

This Court granted review of the following issue:

> WHETHER THE MILITARY JUDGE ABUSED HIS
> DISCRETION BY DENYING TRIAL DEFENSE
> COUNSEL'S CHALLENGE FOR CAUSE AGAINST
> SECOND LIEUTENANT SCOTT, A FRIEND OF
> ONE OF THE PROSECUTORS IN APPELLANT'S
> CASE.

For the reasons set forth, we conclude that the record does not reflect whether the military judge applied the correct legal standard in evaluating a challenge for cause based on implied bias. Nevertheless, since appellant did not carry his burden at trial or on appeal of establishing facts that would warrant application of the doctrine of implied bias, we affirm.

## Background

During general voir dire, the military judge advised the members that "if you know of any matter which might

2

affect your impartiality to sit as a court member, then you must disclose that matter when asked to do so." The military judge also asked the members whether "anyone had any dealings with the parties to this trial which might affect your performance as a court member in any way?" He received a negative response.

Following general voir dire of the members, the two trial counsel, Captains (Capt) McNeil and Marposon, and defense counsel, Capt Kennedy, requested an opportunity to conduct individual voir dire of Second Lieutenant (2Lt) Scott. Questioning by trial counsel revealed that 2Lt Scott was section commander for the 95th Civil Engineering Group. In this capacity, she assisted her group commander, and others, on matters of military justice and discipline involving the Civil Engineering Group's approximately 250 military members. Therefore, she was "pretty familiar with the attorneys in the legal office."

Trial counsel's voir dire of 2Lt Scott included the following:

    TC:  And you – this is kind of a small base, you've
    also had a chance to socialize with some folks in the
    legal office?

    MBR:  Yes, sir.

    TC:  Okay.  The same group of people?

    MBR:  Yes, sir.

3

TC:  Have you ever questioned for yourself whether that socializing with these other attorneys in the office has made it difficult for you to act impartially for the Civil Engineering Group?

MBR:  No, it's never affected my decisions.

Defense counsel's individual <u>voir</u> <u>dire</u> included the following exchange:

DC:  Lieutenant Scott, outside duty hours, 7:30 to 4:30, have you had occasion to speak with Captain Marposon [the trial counsel] on a social basis?

MBR:  Yes, ma'am.

DC:  All alone?

MBR:  Yes, ma'am.

DC:  Okay.  Could you character [sic] your relationship with him?  At any time you've known him. I mean, friendship?

MBR:  With him – yes, friendship.  I've known him since about April, I think.  We're friends.

Defense counsel's questioning also indicated that Capt Marposon had recently bought a car from 2Lt Scott, and that 2Lt Scott had twice visited a beach house in the Los Angeles area shared by Capt Marposon and "other folks." 2Lt Scott indicated that these visits were "[n]ot with him, but I've been to his beach house."  Finally, 2Lt Scott indicated that she had spoken with Capt Marposon during the past two weeks "[j]ust at work, probably ten times. . . . I think only during duty hours, maybe a little less than that."

4

In response to this <u>voir</u> <u>dire</u>, the military judge asked 2Lt Scott, <u>inter</u> <u>alia</u>, whether there was anything about her friendship with Capt Marposon, or anyone in the legal office for that matter, that would cause her to give more weight to the Government's side of the case than she would to the defense side.  She answered,  "No, sir."

Defense counsel challenged 2Lt Scott for cause, "based on RCM 912(f)(1)(N), actual or implied bias."  At the request of the military judge, defense counsel elaborated as follows, making it clear that her challenge was founded in implied bias:

> Sir, based on her answers to the questions I just asked her about her dealings with Captain Marposon, about her friendship with him.  I know she said that she could, you know, adjudge a fair sentence and maintain that fair attitude, but based on implied bias, looking through the eyes of society, it would seem unfair to allow her to stay on the court; it would create an appearance of impropriety.

The military judge immediately responded with the following ruling:

> I will state for the record that I viewed very closely the answers by Lieutenant Scott and her demeanor during the course of the questioning and, quite frankly, I noticed an incredulous look when I asked her if she thought that would in any way affect her impartiality.  I kind of got this "You gotta be kidding me" look.  There is clearly no actual bias in this case, and folks are friends with folks all over the base, and Lieutenant Scott said she could clearly set that information aside and I think quite clearly that she can.  The challenge for Lieutenant Scott is denied."

Defense counsel subsequently used her peremptory challenge against 2Lt Scott and preserved the issue for appeal by noting that she would have used her peremptory challenge against another member, if her challenge for cause against 2Lt Scott had been granted. Defense counsel did not indicate against which other member the peremptory challenge would have been made.

Before this Court, appellate government counsel argue that 2Lt Scott was a social acquaintance of Capt Marposon and not a close personal friend. As a result, they argue, the military judge properly found friendships like that described by 2Lt Scott were too common to serve as a basis for implied bias. Therefore, the Government asserts, this indicates the military judge applied the "eyes of the public" standard, an objective standard, and found no implied bias. The Government concludes that this is not a situation where a reasonable, disinterested observer would doubt the fairness and integrity of the court-martial.

Appellant argues that trial counsel and 2Lt Scott had a close personal relationship that included social, financial, and professional dealings, and that the military judge applied an incorrect legal standard to a challenge

6

based on implied bias by finding only that "folks are friends with folks all over the base."

The court below found that the first part of the judge's finding "reflected his application of the 'eyes of the public' standard for implied bias[.]"  According to that court, "the judge was, in essence, holding that friendships are too common among military personnel on an installation to constitute grounds for per se bias." Unpub. op. at 4.

## Discussion

"As a matter of due process, an accused has a constitutional right, as well as a regulatory right, to a fair and impartial panel."  United States v. Wiesen, 56 MJ 172, 174 (2001).  RCM 912(f)(1)(N), Manual for Courts-Martial, United States (2000 ed.), provides that "[a] member shall be excused for cause whenever it appears that the member  . . . [s]hould not sit as a member in the interest of having the court-martial free from substantial doubt as to legality, fairness, and impartiality."[*]  In furtherance of this rule, this Court has determined that a member shall be excused in cases of implied bias, as well as in cases of actual bias.  United States v. Napoleon, 46

---

[*]  This Manual provision is identical to the one in effect at the time of appellant's court-martial.

MJ 279, 282-83 (1997); <u>United States v. Minyard</u>, 46 MJ 229, 231 (1997); <u>United States v. Daulton</u>, 45 MJ 212, 217 (1996); <u>United States v. Harris</u>, 13 MJ 288, 292 (CMA 1982).

In light of the manner in which members are selected to serve on courts-martial, including the single peremptory challenge afforded counsel under the UCMJ, this Court has determined that military judges must liberally grant challenges for cause. <u>Daulton</u>, <u>supra</u> ("[M]ilitary judges must follow the liberal-grant mandate in ruling on challenges for cause . . . .") (quoting <u>United States v. White</u>, 36 MJ 284, 287 (CMA 1993)). However, the burden of persuasion remains with the party making the challenge. RCM 912(f)(3), Manual, <u>supra</u>.

A military judge's ruling on a challenge for cause is reviewed for an abuse of discretion. <u>United States v. Armstrong</u>, 54 MJ 51, 53 (2000). Military judges are afforded a high degree of deference on rulings involving actual bias. This reflects, among other things, the importance of demeanor in evaluating the credibility of a member's answers during <u>voir</u> <u>dire</u>. By contrast, issues of implied bias are reviewed under a standard less deferential than abuse of discretion but more deferential than <u>de</u> <u>novo</u>. <u>Id</u>. at 54 (citing <u>Napoleon</u>, <u>supra</u> at 283). Observation of the member's demeanor may inform judgments about implied

bias; however, "implied bias is reviewed under an objective standard, viewed through the eyes of the public." Napoleon, 46 MJ at 283, citing Daulton, supra. As this Court has often stated, at its core, implied bias addresses the perception or appearance of fairness of the military justice system. Wiesen, 56 MJ at 174.

In this case, the military judge's otherwise thorough voir dire does not reflect that he applied the correct legal standard to appellant's challenge for implied bias. The Government argues, and the court below found, that the military judge's statement that "folks are friends with folks," "in essence" addresses the concerns inherent in the challenge to 2Lt Scott. However, the military judge's analysis falls qualitatively short, if indeed it was intended to address implied bias at all.

First, it frames but does not squarely address the essential question -- was the military judge satisfied that an objective public observer would find this level of friendship between the prosecutor and a member of the court-martial panel consonant with a fair and impartial system of military justice? The judge's ruling seems to focus entirely on 2Lt Scott's statement that she could and would act impartially. Second, there is no indication that the military judge considered the effect, if any, that the

liberal-grant mandate should have on his ruling. The military judge may well have intellectually applied the right test. However, the law is clear in this area, and we decline to conclude as the court below did that the military judge actually applied the correct test for implied bias. We do not expect record dissertations but, rather, a clear signal that the military judge applied the right law. While not required, where the military judge places on the record his analysis and application of the law to the facts, deference is surely warranted.

Nonetheless, appellant has not met his burden of establishing that grounds for challenge against 2Lt Scott based on implied bias existed. In reaching this conclusion, we need not accept either party's invitation to characterize 2Lt Scott's friendship with Capt Marposon as "close" or merely one of "social acquaintance." Such an exercise too easily lends itself to semantic debate, without substantive precision. What we do know is that 2Lt Scott and Capt Marposon were company grade friends based on professional assignment to the same installation. We know that they knew each other for six months. We know that they had cause to speak by telephone approximately ten times in the two weeks preceding trial, and that this contact occurred during duty hours. We know that 2nd Lt

Scott's duties necessarily required such contact during duty hours. We know that this friendship extended beyond professional hours to social settings. 2Lt Scott indicated she went to a beach house that Capt Marposon shared with other officers, but not necessarily to see Capt Marposon. And, we know that Capt Marposon at some point bought a car from 2Lt Scott. In addition, the military judge observed a look of incredulity when it was suggested to 2Lt Scott that her friendship with Capt Marposon might affect her impartiality. (A measure of actual bias, for sure; but also relevant to an objective observer's consideration.) Applying the liberal-grant mandate, the military judge could have granted appellant's challenge for cause, but he was not required to do so on these facts.

The record does not reflect a romantic relationship. Nor does it reflect a dispute over the vehicle sale or whether there existed an ongoing financial relationship. The record does not specify the nature of the telephone calls during the two weeks preceding trial, but we do know they occurred during duty hours between officers who previously had official business to conduct. In short, appellant has had the opportunity to make his case, but has not met his burden in doing so.

11

On this record, we hold an objective observer, aware of Article 25, UCMJ, 10 USC § 825, and the military justice system, would distinguish between officers who are professional colleagues and friends based on professional contact and those individuals whose bond of friendship might improperly find its way into the members' deliberation room.

The decision of the United States Air Force Court of Criminal Appeals is affirmed.

United States v. Downing, No. 01-0602/AF

CRAWFORD, Chief Judge (concurring in part and in the result):

As I recently advocated in United States v. Wiesen, 56 MJ 172 (2001), if the doctrine of implied bias exists, its application must be limited "to those exceptional and extraordinary circumstances where a juror's emotional attachment to an issue or participant in the court proceeding was such that it was very unlikely, by any objective measurement, that an average person could remain impartial in deciding the merits of the case." Id. at 178 (Crawford, C. J., dissenting); see also United States v. Davenport, 17 MJ 242, 244 (CMA 1984)("What we have sought to guard against is a member who harbors such bias toward the crime that he, based upon the facts ... and the law ..., cannot put his personal prejudices aside in order to arrive at a fair sentence for the accused."). Accordingly, I follow the logic of our other federal appellate courts and examine individual courtmember disqualification based on that court member's ability to be an impartial factfinder and, if required, a sentencing agent. I continue to be dismayed by the way this Court has shifted the focus of implied bias in the two decades since the Supreme Court decided Smith v. Phillips, 455 U.S. 209 (1982). See Wiesen, supra at 179 n.2 (Crawford, C. J., dissenting).

A military judge's ruling on a challenge for cause is reviewed for a clear abuse of discretion.  See Wiesen, supra at 178.  As the majority opinion explains, the military judge failed, based on this Court's precedent, to articulate the proper legal standard when denying appellant's casual challenge of 2Lt Scott for implied bias.  I agree that the military judge is not required to place his reasoning, analysis, or application of the law to the facts on the record when adjudicating implied bias claims.

I disagree with any requirement for a military judge to state on the record that "an objective public observer would find this level of friendship between the prosecutor and a member of the court-martial panel consonant with a fair and impartial system of military justice."  ___ MJ at (9).  First, to require the military judge to find, and then record, that a court member's presence, after being refracted through the prism of public opinion, is "consonant with a fair and impartial system of military justice" undercuts the precedent of this Court, where we have often implied that we can gauge the public's concept of fairness as well as any trial judge. Secondly, if we continue to ignore the answers court members give under oath during voir dire in our attempt to determine public perception, to require the military judge to make implied bias findings on the record seems even more futile.  This Court

2

needs to refocus its sights and apply the doctrine of implied bias in accordance with Supreme Court precedent.

Like the majority, I find the military judge's ruling to be dispositive of any actual bias claim. While a statement by the military judge that he considered the liberal-grant mandate and that defense counsel failed to persuade him in light of this mandate that the excusal of 2Lt Scott was necessary would be helpful on appellate review, no such statement is required. Military judges are presumed to know the law and apply it correctly. United States v. Prevatte, 40 MJ 396, 398 (CMA 1994).

Friendship is not a per se disqualifying factor in determining whether or not a court member is free from actual or implied bias. See, e.g., United States v. Bannwarth, 36 MJ 265 (CMA 1993)(close friendship between president of the court-martial and the appellant's accuser was not automatically disqualifying); United States v. Porter, 17 MJ 377 (CMA 1984)(fact that trial counsel and court member were running buddies and went on volksmarches together did not constitute grounds for removing court member for implied bias).

Routine professional or official relationships between court members and witnesses are also not per se disqualifying factors. See United States v. Warden, 51 MJ 78 (1999); United States v. Ai, 49 MJ 1 (1998); United States v. Velez, 48 MJ 220

(1998).  On the other hand, familial relationships can present disqualifying situations.  <u>See</u> <u>United States v. Glen</u>, 25 MJ 278 (CMA 1987)(Deputy Staff Judge Advocate erred by not disclosing to all parties that his sister-in-law was a member of the court-martial panel).

Since I find no emotional attachment by 2Lt Scott either to an issue or participant in appellant's court-martial, I agree with the majority that appellant, even in light of this Court's liberal-grant mandate, has failed to meet his burden of proof and persuasion.

SULLIVAN, Senior Judge (concurring in the result):


The majority faults the trial judge for failing to make clear on the record that he considered appellant's claim of implied bias and applied the correct legal test in rejecting that claim. It then steps in and de novo resolves this claim against appellant by holding:

> On this record, we hold an objective observer, aware of Article 25, UCMJ, 10 USC § 825, and the military justice system, would distinguish between officers who are professional colleagues and friends based on professional contact and those individuals whose bond of friendship might improperly find its way into the members' deliberation room.


__ MJ at (12). This same majority in United States v. Wiesen, 56 MJ 172 (2001), refused to accept this same military reality where one member was a brigade commander over a significant number of panel members.


In my view, it is up to the military judge to determine, based on all the circumstances of a case, whether a challenge for cause should be granted on this or any other basis. See United States v. Wiesen, supra at 182-83 (Sullivan, S.J., dissenting). I would review his decision for an abuse of discretion. Id. I applaud the majority's recognition of the military realities in appellant's case and conclude that a reasonable basis existed on

this record for the military judge's action.  The military judge in this case did not abuse his discretion in denying appellant's challenge for cause.

Turning to the question whether military judges must "liberally" grant challenges for cause, I think our position on this matter should be reconsidered.  See United states v. Wiesen, supra at 183 n.1 (Sullivan, S.J., dissenting).  Regardless of the Manual drafters' assertion that this policy is still in effect, the President removed the only express statement of this policy in 1984, more than seventeen years ago!  See RCM 912(f)(3), Manual for Courts-Martial, United States, 1984; United States v. White, 36 MJ 284, 287 (CMA 1993).  Moreover, policy, unlike law, is unenforceable and largely hortatory in nature.  See United States v. Sloan, 35 MJ 4, 9 (CMA 1992) ("policy typically is not law").  In addition, the reasons for this policy, although deeply historical in origin, have largely dissipated over time.  See generally George B. Davis, A Treatise on the Military Laws of the United States 88 n.1 (3rd Rev. ed. 1913); William Winthrop, Military Law and Precedents 212-13 (2d ed. 1920 Reprint); William C. DeHart, Observations on Military Law and the Constitution and Practice of Courts-Martial 115-16, 125-27 (1846).  Finally, in view of the broad discretion afforded by this Court to a trial judge in deciding challenges for cause, a qualitative standard of liberality is nearly impossible to ensure.  See United States v. White, supra.