# UNITED STATES AIR FORCE COURT OF CRIMINAL APPEALS

## UNITED STATES

### v.

### Lieutenant Colonel PAMELA L. NOVY
### United States Air Force

### ACM 38554

### 14 July 2015

Sentence adjudged 19 December 2013 by GCM convened at Joint Base Elmendorf-Richardson, Alaska. Military Judge: Lyndell M. Powell and Matthew P. Stoffel.

Approved Sentence: Dismissal and a reprimand.

Appellate Counsel for the Appellant: Major Nicholas D. Carter and Major Isaac C. Kennen.

Appellate Counsel for the United States: Major Jeremy D. Gehman; Major Jason M. Kellhofer; and Gerald R. Bruce, Esquire.

Before

ALLRED, SANTORO, and TELLER
Appellate Military Judges

OPINION OF THE COURT

This opinion is issued as an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 18.4.

SANTORO, Judge:

A general court-martial composed of officer members convicted the appellant, contrary to her plea, of one specification of wrongfully using marijuana in violation of Article 112a, UCMJ, 10 U.S.C. § 912a. The adjudged and approved sentence consisted of a dismissal and a reprimand. The appellant argues that (1) she was selectively prosecuted, (2) the court-martial lacked jurisdiction because women were improperly excluded from the panel, (3) court-martial verdicts that do not require unanimity violate due process, (4) the military judge erred by allowing trial counsel to ask a voir dire

question not reasonably calculated to elicit potential bias, and (5) the evidence is legally and factually insufficient to sustain the conviction. We disagree and affirm.

*Background*

The appellant, commander of the base mental health flight with over 17 years of Air Force and Army service, was randomly selected to provide a urine sample for testing pursuant to the Air Force's Drug Demand Reduction Program. Her sample tested positive for tetrahydrocannabinol, a metabolite of marijuana. This court-martial followed.

Additional facts necessary to resolve the assigned errors are included below.

*Selective Prosecution*

After receiving the report of the positive urinalysis result, base drug testing authorities notified the appellant's commander and the Air Force Office of Special Investigations. That same day investigators summoned the appellant for an interview. She invoked her right to counsel and declined to answer questions.

Approximately 21 days later, the appellant's squadron commander, Colonel (Col) RH, ordered the appellant to her office. Col RH knew that the appellant had previously requested counsel. Without providing an Article 31, UCMJ, 10 U.S.C. § 831, rights advisement, Col RH said, "I want to give you an opportunity one last time to tell me your side of the story, if there's anything you'd like to say." The appellant declined to make a statement. According to Lieutenant Colonel (Lt Col) SB, the squadron's deputy commander, prior to this meeting Col RH told Lt Col SB that if the appellant "was willing to tell her what happened, if there was perhaps an explanation, that she might be able to just give her an Article 15 rather than prefer charges." Lt Col SB further testified that the appellant's decision not to make a statement was the "deciding factor in preferring charges" for Col RH.

Lt Col SB testified that there had been a major under Col RH's command who had been stealing and illegally using medication. Lt Col SB testified that the major's case involved "a lot of extenuating circumstances." Despite the major's decision to "share and talk through the issues" with Col RH, charges were still preferred, but Col RH supported the major's resignation in lieu of trial.

The appellant made no claim of selective prosecution at trial. Instead, the evidence summarized above was elicited in the context of a defense motion for credit for illegal pretrial punishment under Article 13, UCMJ, 10 U.S.C. § 813, in which the main claim was that the appellant's command had impermissibly suspended her clinical privileges and downgraded her officer performance report in light of the allegations against her.

We review allegations of selective prosecution de novo. *United States v. Argo*, 46 M.J. 454, 463, (C.A.A.F. 1997). "To support a claim of selective or vindictive prosecution, an accused has a 'heavy burden' of showing that 'others similarly situated' have not been charged, that '[s]he has been singled out for prosecution,' and that [her] 'selection . . . for prosecution' was 'invidious or in bad faith, i.e., based upon such impermissible considerations as race, religion, or the desire to prevent [her] exercise of constitutional rights.'" *Id.* at 463 (quoting *United States v. Garwood*, 20 M.J. 148, 154 (C.M.A. 1985)) (third alteration in original).

We need look no further than the first *Argo* prong. There is insufficient evidence that the appellant and the major were similarly situated. The record does not reflect the frequency or duration of the major's conduct as compared with appellant's. Nor does it reflect what the major's "extenuating circumstances" were or how they compared with the appellant's case. While we do know that both the major and the appellant had charges preferred, we do not know whether the appellant ever sought resignation in lieu of court-martial. The appellant has therefore failed to meet her "heavy burden" to establish that she and the major were similarly situated.

### Exclusion of Women from the Panel

The appellant challenges the jurisdiction of the court-martial, arguing that the convening authority improperly excluded women from consideration for service. We review de novo whether a panel has been properly selected. *United States v. Dowty*, 60 M.J. 163, 171 (C.A.A.F. 2004).

"'As a matter of due process, an accused has a constitutional right, as well as a regulatory right, to a fair and impartial panel.'" *United States v. Downing*, 56 M.J. 419, 421 (C.A.A.F. 2002) (quoting *United States v. Wiesen*, 56 M.J. 172, 174 (C.A.A.F. 2001)). Article 25(a), UCMJ, 10 U.S.C § 825(a), generally provides that "[a]ny commissioned officer on active duty is eligible to serve on all courts-martial." Section 25(d), UCMJ, however, establishes limits on this eligibility: members junior in rank or grade to the accused are ineligible to serve "[w]hen it can be avoided." From among the remaining officers eligible to serve on a court-martial panel, "the convening authority shall detail as members thereof such members . . . as, in his opinion, are best qualified for the duty by reason of age, education, training, experience, length of service, and judicial temperament." Article 25(d)(2), UCMJ. The convening authority may rely on staff and subordinate commanders to compile a list of eligible members. *Dowty*, 60 M.J. at 169–70.

In this case, the special court-martial convening authority nominated 15 members to serve on the appellant's court-martial. The general court-martial convening authority selected 12 of the 15 nominees. None of the nominees were female. Without offering

any supporting evidence, the appellant argues for the first time on appeal that because there were no women nominated or selected, the convening authority must have improperly excluded women from consideration.

As there is no evidence supporting the conclusion that women were intentionally excluded from consideration, we conclude that there has been no violation of the appellant's due process rights, nor any lack of jurisdiction in her court-martial. The appellant argues (without evidentiary support in the record) that the commissioned officer corps in 2013 was approximately 20 percent female but makes no attempt to identify how many of those officers would have been senior to her, assigned within the general court-martial convening authority's command, available to perform court-martial duty, or other relevant considerations. The appellant concedes that there is no evidence of bad faith; instead, she suggests that we adopt a requirement that women be included on every court-martial of a female. This is not the law, and we decline to adopt that position.

*Right to a Unanimous Verdict*

The appellant contends that the government violated her Fifth Amendment[1] right to due process of law because she was convicted by a court-martial panel consisting of only six members whose verdict did not have to be unanimous. The appellant relies on the Supreme Court's rulings in *Ballew v. Georgia*, 435 U.S. 223 (1978), and *Burch v. Louisiana*, 441 U.S. 130 (1979), to support her position that she was entitled to a jury with at least six members and that she could only be found guilty by a unanimous vote. In *Ballew*, the Supreme Court held that a trial consisting of a jury of less than six persons deprives a defendant of the right to trial by a jury as contemplated by the Sixth Amendment.[2] 435 U.S. at 245. The decision was based on empirical studies showing that "the purpose and functioning of the jury in a criminal trial is seriously impaired, and to a constitutional degree, by a reduction in size to below six members." *Id*. at 239. Subsequently, in *Burch*, the Court held that conviction by a nonunanimous six-member jury also fails to comply with the Sixth Amendment, saying:

> [M]uch the same reasons that led us in *Ballew* to decide that use of a five-member jury threatened the fairness of the proceeding and the proper role of the jury, lead us to conclude now that conviction for a nonpetty offense by only five members of a six-person jury presents a similar threat to preservation of the substance of the jury trial guarantee and justifies our requiring verdicts rendered by six-person juries to be unanimous.

---

[1] U.S. CONST. amend. V.
[2] U.S. CONST. amend. VI.

441 U.S. at 138.

In *O'Callahan v. Parker*, 395 U.S. 258 (1969), *overruled on other grounds by Solorio v. United States*, 483 U.S. 435 (1987), the Supreme Court explained:

> The Constitution gives Congress power to "make Rules for the Government and Regulation of the land and naval Forces," and it recognizes that the exigencies of military discipline require the existence of a special system of military courts in which not all of the specific procedural protections deemed essential in Art. III trials need apply. The Fifth Amendment specifically exempts "cases arising in the land or naval forces, or in the Militia, when in actual service in time of War or public danger" from the requirement of prosecution by indictment and, inferentially, from the right to trial by jury. The result has been the establishment and development of a system of military justice with fundamental differences from the practices in the civilian courts.

*Id*. at 261–62 (internal citations and emphasis omitted).

If the case does not arise in the land or naval forces, then the accused gets, first, the benefit of an indictment by a grand jury and, second, a trial by jury before a civilian court as guaranteed by the Sixth Amendment and by Article III, Section 2, of the Constitution, which provides, in part:

> The Trial of all Crimes, except in Cases of Impeachment, shall be by Jury; and such Trial shall be held in the State where the said Crimes shall have been committed; but when not committed within any State, the Trial shall be at such Place or Places as the Congress may by Law have directed.

While the Sixth Amendment requires trial by jury in federal criminal cases, and that jury's composition must be a representative cross-section of the community, courts-martial have never been considered subject to the jury-trial demands of the Constitution. *United States v. McClain*, 22 M.J. 124, 128 (C.M.A.1986); *see also O'Callahan*, 395 U.S. at 261–62. Our superior court recently re-emphasized that the Sixth Amendment right to a jury trial does not apply to courts-martial. *United States v. Easton*, 71 M.J. 168, 175 (C.A.A.F. 2012) (citing *Ex parte Quirin*, 317 U.S. 1, 39 (1942); *Wiesen*, 57 M.J. 48.

We find the authorities cited by appellant to buttress her claim of a due process violation, *Ballew* and *Burch*, do not limit the power of Congress to create rules for

courts-martial pursuant to Article I, Section 8, of the Constitution. Consistent with our superior court's precedent, courts-martial are not subject to the same jury requirements as other criminal trials.

*Voir Dire*

Trial counsel sought to ask:

> [T]he military judge will instruct you that the accused may be convicted of using marijuana based solely upon the positive urinalysis and that you may infer knowing and wrongful drug use simply by the presence of marijuana or its metabolites in her body; that's called a 'permissive inference.' Does everyone understand a positive urinalysis alone may be considered as proof beyond a reasonable doubt that an accused is guilty of the charged offense?

Trial defense counsel objected to this question, arguing that it was intended to elicit a promise from court members that they would commit to drawing the permissive inference. Conversely, trial counsel said that the question was intended to determine whether the members would follow the military judge's anticipated instruction on permissive inferences. The military judge overruled the objection and permitted the question.

A military judge is given wide discretion in determining the scope of voir dire. *United States v. White*, 36 M.J. 284, 287 (C.M.A. 1993). "The nature and scope of the examination of members is within the discretion of the military judge." Rule for Courts-Martial 912(d), Discussion. As our superior court has stated, when we review issues involving a military judge's voir dire determinations, "we 'should reverse only when a clear abuse of discretion, prejudicial to a defendant, is shown.'" *United States v. Loving*, 41 M.J. 213, 257 (C.A.A.F. 1994) (quoting *United States v. Smith*, 27 M.J. 25, 28 (C.M.A. 1988)).

The military judge later properly instructed the members:

> Use of a controlled substance may be inferred to be wrongful in the absence of evidence to the contrary. However, the drawing of this inference is not required. Knowledge by the accused of the presence of the substance and knowledge of its contraband nature may be inferred from the surrounding circumstances. You may infer from the presence of THC in the accused's urine that the accused knew she used marijuana. However, the drawing of any inference is not required.

We see nothing about trial counsel's question that improperly stated the law or that was designed to seek a commitment from the members that they would draw the permissive inference. Moreover, because the members are presumed to follow the military judge's instructions, *United States v. Jenkins*, 54 M.J. 12, 20 (C.A.A.F. 2000), and there is no evidence that they did not, even assuming arguendo that the question was confusing, the military judge's later legally-correct instruction cured any possible uncertainty.

*Factual and Legal Sufficiency*

The appellant challenges the legal and factual sufficiency of the evidence. We review issues of legal and factual sufficiency de novo. *See United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002). "The test for legal sufficiency of the evidence is 'whether, considering the evidence in the light most favorable to the prosecution, a reasonable factfinder could have found all the essential elements beyond a reasonable doubt.'" *United States v. Humpherys*, 57 M.J. 83, 94 (C.A.A.F. 2002) (quoting *United States v. Turner*, 25 M.J. 324, 324 (C.M.A. 1987)). "Proof beyond a reasonable doubt . . . does not mean that the evidence must be free of conflict." *United States v. Lips*, 22 M.J. 679, 684 (A.F.C.M.R. 1986).

The test for factual sufficiency is "whether, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, [we are] convinced of the [appellant]'s guilt beyond a reasonable doubt." *Turner*, 25 M.J. at 325. In conducting this unique appellate role, we take "a fresh, impartial look at the evidence," applying "neither a presumption of innocence nor a presumption of guilt" to "make [our] own independent determination as to whether the evidence constitutes proof of each required element beyond a reasonable doubt." *Washington*, 57 M.J. at 399.

The attack is largely two-fold: first, that irregularities in the testing process undermine confidence that the sample tested was the appellant's; and second, that the appellant's alternate theory concerning how she may have ingested marijuana precludes a finding of guilt beyond a reasonable doubt. We are not persuaded by either argument.

Local laboratory personnel assigned a specimen number to the appellant's urine when it was provided. When the report of the positive test result was received, base personnel noted that the specimen number on the positive report did not match the specimen number in their records for the appellant's sample. The government offered the testimony of the laboratory certifying official (LCO). The LCO testified that because the appellant's sample arrived accompanied by a nonbarcoded (and machine-scannable) DD Form 2624 (Specimen Custody Document), the specimen data had to be entered by laboratory personnel by hand. This process required that the laboratory personnel key in and verify the test subject's Social Security number and other identifying information.

The LCO testified that the laboratory software auto-generates a specimen number when data is keyed by hand and that the person entering the data is required to adjust the auto-generated specimen number to reflect the actual specimen number on the sample. In this case, she testified, the person who did the data entry failed to enter the appropriate specimen number. The LCO completed her testimony on this point by confirming that the sample tested was, in fact, the appellant's based on the Social Security number affixed to the specimen bottle.

The appellant's 27-year-old son testified on her behalf. A chef by trade and marijuana user by admission with a criminal conviction, he testified that while he was visiting the appellant's home and while she was out of the area, he experimented with using marijuana to make a tincture with which to infuse desserts. He made truffles and caramels, both laced and not laced with the marijuana-based tincture, and mistakenly left behind some of the laced truffles when he left the appellant's home in Alaska to return to Virginia. The appellant herself then testified, confirming that she found in her refrigerator and consumed truffles immediately prior to being ordered to provide a urine specimen, although she did not know that her son had laced them with marijuana until several months after her positive urinalysis result.

We have reviewed the record of trial, paying particular attention to the evidence and reasonable inferences that can be drawn therefrom, including all of the matters raised by the appellant. In viewing the evidence in the light most favorable to the government, we conclude that a rational factfinder could have found beyond a reasonable doubt that the appellant used marijuana. Having reviewed the entire record and making allowances for not personally observing the witnesses, we ourselves are convinced of the appellant's guilt beyond a reasonable doubt.

*Conclusion*

The approved findings and the sentence are correct in law and fact, and no error materially prejudicial to the substantial rights of the appellant occurred. Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c). Accordingly, the approved findings and the sentence are **AFFIRMED**.

FOR THE COURT

LEAH M. CALAHAN
Deputy Clerk of the Court