# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
BURTON, HAGLER, and SCHASBERGER
Appellate Military Judges

**UNITED STATES, Appellee**
**v.**
**Staff Sergeant LONNIE L. PETERKIN**
**United States Army, Appellant**

ARMY 20160278

Headquarters, United States Army Recruiting Command
Tyesha L. Smith, Military Judge (arraignment)
Gary A. Loxley, Military Judge (trial)
Major Nagesh Chelluri, Acting Staff Judge Advocate (pretrial)
Colonel Rick S. Lear, Staff Judge Advocate (post-trial)

For Appellant: Major Ryan T. Yoder, JA; Major J. David Hammond, JA (on brief).

For Appellee: Lieutenant Colonel Eric K. Stafford, JA; Major Michael E. Korte, JA; Captain Allison L. Rowley, JA (on brief).

27 April 2018

------------------------------------
MEMORANDUM OPINION
------------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

SCHASBERGER, Judge:

Appellant, Staff Sergeant (SSG) Lonnie L. Peterkin, appeals his conviction for larceny, alleging the military judge deprived him a fair trial when the military judge denied his challenges against two panel members. We find no error in the military judge's rulings on the panel member challenges. Appellant also requests relief due to post-trial errors by the government. We agree that the government erred during the post-trial process, but find appellant was not prejudiced by the error and is, therefore, entitled to no relief.

An officer and enlisted panel sitting as a special court-martial convicted appellant, contrary to his pleas, of one specification of larceny in violation of Article 121, Uniform Code of Military Justice, 10 U.S.C. § 921 (2012). The panel sentenced appellant to a bad-conduct discharge. The convening authority approved the sentence.

## BACKGROUND

In July 2012, appellant was assigned to the U.S. Army Recruiting Company, Greenville, North Carolina, a unit within the 2nd Recruiting Brigade. His new duty station was remote from the company headquarters.

Initially appellant stayed in a local hotel and was entitled to basic allowance for housing (BAH) while in the hotel. In August 2012, appellant moved into base housing. This housing was owned by the government and appellant did not pay any rent. Thus, he was no longer entitled to BAH.

Appellant continued to receive BAH the entire time he lived in base housing. He knew he was not entitled to the BAH and initially set aside the money so he could pay it back. He took no steps to return the money or stop the payments. In total he received $45,000.00 in unauthorized BAH payments.

*A. Challenges to the Panel Members*

At trial, the defense challenged four panel members for actual and implied bias, including Lieutenant Colonel (LTC) FC. Prior to the court-martial, LTC FC served as an investigating officer, to include conducting an administrative investigation in which another panel member, Command Sergeant Major (CSM) WH, was one of the subjects.[1]

At the time of the court-martial, the investigation was still pending action by the appointing authority. Lieutenant Colonel FC had concluded his duties, finding no evidence of improper conduct by CSM WH.

To support their challenge of LTC FC, defense counsel argued:

> [It] is very concerning to the defense in that [CSM WH] may feel awkward or unable to talk. That specific investigation was an [Equal Opportunity Office (EO)] investigation and I do have a minority client. So I don't want [CSM WH] to feel like he has to follow whatever [LTC FC] says. I think it's important that he—he not sit on this panel.

In response, government counsel noted that CSM WH mentioned no concerns about serving on a panel with LTC FC. In addition, LTC FC stated his role as an

---

[1] The investigation conducted pursuant to Army Regulation 15-6 concerned allegations that CSM WH and his brigade commander discriminated against a soldier on the basis of race when initiating an administrative discharge.

2

investigating officer was to consider all of the evidence and make independent judgments based on the facts and that he would do the same as a panel member.

Before ruling, the military judge explained:

> I've considered the challenge for cause of [LTC FC] on the basis of both actual and implied bias and the mandate to liberally grant defense challenges. The challenge is denied because [LTC FC] said that there would be no issues, it would not affect this case. No relationship was discovered during the questioning of his role between the cases he investigated and his ability not to serve as a fair, impartial, and objective panel member in this case.

The defense also challenged CSM AB and CSM NL. The defense argued CSM AB had an inelastic disposition towards findings and had a working relationship with both CSM NL and CSM WH. The defense claimed CSM NL could not be impartial because his mother had financial problems and because he had investigated similar cases in the past. The military judge denied both challenges, finding the defense did not meet its burden to show either actual or implied bias. The defense used its peremptory challenge against CSM AB.

### B. Post-Trial Errors

After receiving the staff judge advocate's recommendation (SJAR) and the record of trial, the defense submitted clemency matters pursuant to Rule for Courts-Martial [hereinafter R.C.M.] 1105. In their clemency matters, defense counsel alleged the military judge deprived appellant of a fair trial by not granting the defense challenges of two panel members, LTC FC and CSM AB. As a remedy, the defense requested the convening authority "suspend the bad-conduct discharge, which will allow the appellate court to decide the issue and give you flexibility to impose the adjudged punishment (after appellate review) if SSG Peterkin commits any further misconduct."

In his addendum to the SJAR, the staff judge advocate (SJA) listed the clemency matters submitted by the defense. The addendum correctly noted the defense request to suspend the bad-conduct discharge but incorrectly stated: "[t]here is no allegation of legal error in the request for clemency submitted by the defense and, in my opinion, none was committed." The SJA advised the convening authority that he must consider the defense request and reiterated his recommendation to approve the sentence as adjudged, but added that "as the convening authority, you are not bound by my recommendation."

On 19 August 2016, the convening authority took initial action, approving the adjudged sentence. The unit mailed the record to this court on 30 January 2017, and

it was received on 6 February 2017.  The delay between action and receipt was 171 days.  The government offered no satisfactory excuse for this delay, but explained that the record of trial was not maintained in its proper place.

## LAW AND DISCUSSION

### A.  Challenges to the Panel Members

As an assignment of error appellant argues that the military judge erred by not granting the defense challenge against LTC FC.  In his clemency matters, defense counsel alleged the military judge also erred when he denied the challenge against CSM AB.  We will address these alleged errors as both actual and implied bias.

Actual bias is a question of fact to be decided by the military judge based on the responses of the member and any other evidence presented at the court-martial.

> "A military judge's ruling on a challenge for cause is reviewed for an abuse of discretion.  Military judges are afforded a high degree of deference on rulings involving actual bias.  This reflects, among other things, the importance of demeanor in evaluating the credibility of a member's answers during voir dire."

United States v. Woods, 74 M.J. 238, 243 (C.A.A.F. 2015) (quoting United States v. Downing, 56 M.J. 419, 422 (C.A.A.F. 2002)).  In United States v. Daulton, our superior court made clear that the burden of establishing a legal and factual basis to support a challenge for cause is on the party making the challenge.  45 M.J. 212, 217 (C.A.A.F. 1996).

In light of this standard, there is no basis for us to disturb the military judge's finding that neither LTC FC nor CSM AB exhibited actual bias.  Government counsel questioned LTC FC extensively on his role as an investigating officer and his relationship with CSM WH.[2]  The military judge was able to gauge LTC FC's responses and assess his demeanor and sincerity.  Likewise, nothing in CSM AB's responses tends to show he was predisposed to an outcome in this case.  We conclude the military judge did not abuse his discretion in denying the challenges for cause for actual bias.

The test for implied bias is objective, viewing the circumstances through the eyes of the public and focusing on the perception or appearance of fairness.  United States v. Clay, 64 M.J. 247, 276 (C.A.A.F. 2007) (quoting United States v. Rome, 47 M.J. 467, 469 (C.A.A.F. 1998)).  "We look to determine whether there is 'too high a

---

[2] Defense counsel did not have any follow-up questions for LTC FC regarding this investigation.  Instead, defense counsel asked: "Now what I really want to know is how you have never had any problem updating your ORB?"

risk that the public will perceive' that the accused received less than a court composed of fair, impartial, equal members." *United States v. Moreno* 63 M.J. 129, 134 (C.A.A.F. 2006) (quoting *United States v. Wiesen*, 56 M.J. 172, 176 (C.A.A.F. 2001)).

The standard of review for an implied bias challenge is "less deferential than abuse of discretion, but more deferential than de novo review." *Id.* Further, where a military judge has addressed implied bias by applying the liberal grant mandate on the record, that military judge will accordingly be granted "more deference on review than one that does not." *Clay*, 64 M.J. at 277.

In his ruling rejecting the implied bias challenges against LTC FC and CSM AB, the military judge plainly stated he considered the liberal grant mandate as part of his decision. Thus, we give more deference to his ruling than if he had failed to do so.

Defense counsel argued that because their client was a minority they did not want CSM WH to feel pressured by the open equal opportunity investigation. Yet the defense did not challenge the subject of the investigation, CSM WH, who was accused of violating EO policy. Instead, the defense challenged the investigator, LTC FC.

Similarly, although the defense claimed CSM AB's role as the brigade CSM would have an adverse impact on CSM WH and CSM NL, there was no evidence adduced that either of the two members would be unduly influenced by CSM AB. Additionally, CSM AB was neither the supervisor nor the rater of the other two members. Due to the geographical dispersion of the unit, none of the CSMs on the panel served in the same location and did not interact with each other on a daily basis.

Under these circumstances and our review of the record, we find no reason why the public would question the objectivity of the panel or the fairness of the proceedings. Thus, we conclude the military judge did not err in his denial of the implied bias challenges.

### B. Post-Trial Errors

Appellant alleges and we agree that the government committed error during the post-trial process. First, the SJA's addendum to the SJAR mistakenly stated that the clemency matters pursuant to R.C.M. 1105 raised no allegations of legal error. Second, the Office of the Staff Judge Advocate failed to mail the record to this court for 164 days after the convening authority took action.

In their clemency matters, defense counsel alleged the military judge erred in denying the challenges against LTC FC and CSM AB. As discussed above, we find no error by the military judge in his denial of either of those challenges. Even so,

the SJA's addendum failed to address the allegation of legal error, as required by R.C.M. 1106(d)(4).

"Ordinarily, 'failure by the staff judge advocate to respond to an allegation of legal error . . . requires remand to the convening authority for comment by the staff judge advocate.'" *United States v. Arias*, 72 M.J. 501, 505 (Army Ct. Crim. App. 2013) (quoting *United States v. Hill*, 27 M.J. 293, 297 (C.M.A. 1988)). We may deviate from the general rule when it is foreseeable that acknowledging the defense error would not have led to a different recommendation by the SJA or to favorable action by the convening authority. *Hill*, 27 M.J. at 297.

Despite the above mentioned mistake, the rest of the addendum contained the information required for the convening authority to take action. The convening authority was properly informed that the defense requested clemency, in the form of suspension of the bad-conduct discharge. The SJA gave his recommendation— namely, that the convening authority approve the sentence as adjudged—and correctly informed the convening authority that he was not required to follow the SJA's recommendation. Finally, the addendum informed the convening authority that he had to consider the defense submission.

As a result, we conclude the SJA's failure to respond to the allegation of legal error to be harmless. The allegation was without merit, so there is no reason to suspect that a mistake-free addendum would have led to a "favorable recommendation by the staff judge advocate or to corrective action by the convening authority." *Id.*

Finally, appellant alleges his due process rights were violated by the 171 days the government took between action by the convening authority and docketing of the case with this court. We disagree.

The government's failure to mail the record for 164 days is inexcusable. Under *Moreno*, a presumption of unreasonable delay is triggered when a record is not docketed with this court within thirty days. 63 M.J. at 142. Applying the four-factor analysis under *Barker v. Wingo*, we find no evidence that appellant was prejudiced by the delay. 407 U.S. 514, 530-32 (1972). Therefore, although we conclude the delay was unreasonable, it does not rise to the level of a due process violation.

Although we find no due process violation, we still review the appropriateness of appellant's sentence in light of the dilatory post-trial processing. UCMJ art. 66(c); *United States v. Tardif*, 57 M.J. 219, 224 (C.A.A.F. 2002) ("[Pursuant to Article 66(c), UCMJ, service courts are] required to determine what findings and sentence 'should be approved,' based on all the facts and circumstances reflected in the record, including the unexplained and unreasonable post-trial delay."); *see generally United States v. Toohey*, 63 M.J.

353, 362-63 (C.A.A.F. 2006); *United States v. Ney*, 68 M.J. 613, 617 (Army Ct. Crim. App. 2010).

While such unjustified post-trial delay might ordinarily warrant relief, in this case, appellant's punishment for stealing $45,000.00 was a bad-conduct discharge and no confinement. After reviewing the record, we find the sentence as approved by the convening authority to be appropriate. Consequently, despite the government's failure to meet its obligation to provide timely post-trial processing of the record, relief is not warranted.

### CONCLUSION

On consideration of the entire record, the findings of guilty and the sentence are AFFIRMED.

Senior Judge BURTON and Judge HAGLER concur.

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court