UNITED STATES, Appellee,

v.

Brian T. WARDEN, Sergeant,
U.S. Army, Appellant.

No. 98–0237.
Crim.App. No. 9502034.

U.S. Court of Appeals for
the Armed Forces.

Argued Dec. 3, 1998.

Decided July 21, 1999.

GIERKE, J., delivered the opinion of the Court, in which COX, C.J., and SULLIVAN, CRAWFORD, and EFFRON, JJ., joined.

For Appellant: *Frank J. Spinner* (argued); *Captain Dirk Gifford* and *Captain John C. Einstman* (on brief).

For Appellee: *Major Lyle D. Jentzer* (argued); *Colonel Russell S. Estey* and *Lieutenant Colonel Eugene R. Milhizer* (on brief).

Judge GIERKE delivered the opinion of the Court.

A general court-martial composed of officer members convicted appellant, pursuant to his pleas, of three specifications of aggravated assault by engaging in unprotected sexual intercourse, knowing that he was infected with HIV, without informing his sexual partner of his infection; and one specification of willful disobedience of a "safe-sex" order, in violation of Articles 128 and 90, Uniform Code of Military Justice, 10 USC §§ 928 and 890, respectively. He was convicted, contrary to his pleas, of one specification of aggravated assault by having unprotected sexual intercourse and one specification of adultery, in violation of Articles 128 and 134, UCMJ, 10 USC §§ 928 and 934, respectively. The adjudged and approved sentence provides for a dishonorable discharge, confinement for 10 years, total forfeitures, and reduction to the lowest enlisted grade. The Court of Criminal Appeals affirmed the findings and sentence without opinion.

This Court granted review of the following issue:

WHETHER THE MILITARY JUDGE ABUSED HIS DISCRETION BY DENYING APPELLANT'S CHALLENGE FOR CAUSE AGAINST THE PANEL PRESIDENT, COLONEL SASSER, WHO EXPRESSED A FAVORABLE OPINION ON THE CREDIBILITY OF A PROSECUTION WITNESS, CORPORAL SMITH, WHO HAD BEEN HIS PERSONAL SECRETARY.

For the reasons set out below, we affirm.

*Factual Background*

During general *voir dire* of the court members, the members were not asked if they knew any of the witnesses who would be testifying, and the witnesses were not identified at that time. After several prosecution witnesses had testified, trial counsel announced that the next witness would be Sonja Smith. Colonel (COL) Sasser, the senior member of the panel, interjected by asking the military judge, "May I submit this to you?" The military judge asked if it was a question for a witness, and COL Sasser responded, "No, not for a witness; it's about procedure." He then informed the military judge that he had a question "concerning my knowledge of a witness that's about to come in."

All the members except COL Sasser were excused, and the following dialogue took place among COL Sasser, the military judge (MJ), trial counsel (TC), and defense counsel (DC):

MJ: All right, sir, what's on your mind?

COL Sasser (MBR): Just that the witness that's about to come in, his—if it's who I think it is, you said Sonja Smith?

TC: Yes, sir. It's Corporal Smith's wife.

MBR: Corporal Smith worked directly for me as my secretary in my headquarters previous to going to Korea. Therefore, I know him and I know his wife. I want to make sure procedurally that's not a problem with anything.

MJ: All right. Let me make sure I've got this straight. Corporal Smith worked for you, not his wife. Is that correct?

MBR: That's correct.

MJ: And you met his wife apparently during the course—

MBR: I have met her on more than one occasion, only through him.

MJ: ... Do you believe, sir, that you would be able to scrutinize her testimony like the testimony of any other witness?

MBR: Certainly.

MJ: And you could question her testimony and would you be willing to consider all the facts and circumstances that tended to support or to refute what she had to say and make a determination as to weight if any to give her testimony based on all the circumstances?

MBR: Yes, sir.

MJ: Do you feel that you would necessarily be compelled to believe her any more than any other witness just because of your knowledge of her as being the wife of a soldier who used to work for you?

MBR: No, certainly not.

MJ: Counsel for either side, do you have any questions you would like to ask Colonel Sasser concerning his—

TC: No, sir, but it may be that Corporal Smith testifies also.

MJ: Well, I ask you the same questions concerning Corporal Smith.

MBR: To answer honestly, I'd have to say that, obviously, I would have faith in what he said, yes.

MJ: Well, if you heard his testimony and you believe that there is other evidence in the case, would you be willing to consider the other evidence in weighing the credibility of Corporal Smith?

MBR: I would consider all the evidence.

MJ: Okay. Could you consider other factors such as the opportunity to observe an incident, to recall—the opportunity to recall all the other matters that would pertain to credibility. Could you consider that in arriving at a determination as to how much weight you would give his testimony?

MBR: Yes, sir.

MJ: All right. Are there further questions by either counsel based on my questions?

TC: No, sir.

DC: Sir, you said you have faith in what he would tell you?

MBR: What I meant was, he worked for me in a trusted position and obviously, I had some trust in him as my personal secretary, 71 Lima.

DC: So you had interactions with him everyday?

MBR: Everyday.

DC: So, you built up a trust for him?

MBR: Well, yes.

DC: Okay. And—

MBR: Confidence. I guess I would say just confidence in him that if I told him to do something, he did it, or if he was supposed to do something, that he would do it.

DC: Sir, if he were to testify here today, would you have that same confidence in him?

MBR: I'm sorry?

DC: That same confidence that you built up during his work performance or his working with you, would you have that same trust for him while he was on the stand?

MBR: I think I would, yes. I mean, I would have some trust in what he says, yes.

DC: Sir, if Corporal Smith is up there testifying and then we have another witness come up and testify to something that is contrary to what Corporal Smith testified. Would you give Corporal Smith's any more weight?

MBR: I would certainly try to listen to both of them and make a judgment call on credibility, yes.

DC: But would you give his testimony any more weight, sir, because of this confidence, because of this trust?

MBR: I would try not to.

DC: But deep down inside sir. Do you think you would be able to?

MBR: I think I can, based on what I'm hearing, yes.

MJ: Okay. As I told you earlier, way earlier, when we were going through our general voir dire, I told you that in weighing and evaluating the testimony of witnesses, you are required to use the same standard in evaluating the testimony of each witness and not on—not give more or less weight to the testimony of a particular witness solely because of that witness' po-

sition or status and that applied to a witness such as Corporal Smith.

MBR: Yes, I understand, that's why I brought it up. I wanted to make sure.

MJ: And the court appreciates that, sir, but my understanding is, that you believe that you can evaluate his testimony and scrutinize it?

MBR: As well as I could with anyone else's, yes.

MJ: You wouldn't just automatically believe it because he happens to be in the witness stand. Is that right?

MBR: Yes.

Defense counsel challenged COL Sasser for cause, contending that he would not be able to properly evaluate Corporal (CPL) Smith's testimony. The military judge denied the challenge.

During trial on the merits, appellant presented an alibi defense. The victim, LKL, testified that appellant came to her house between 10:15 and 10:30 p.m. on May 19, 1995, and that they had sexual intercourse shortly thereafter. Appellant presented the testimony of three witnesses, Linda Byes, William Byes, and Linda Taylor, who testified that appellant was with them at a bowling alley until shortly after 11:00 p.m. on May 19.

To rebut the alibi, the prosecution called CPL Smith. He testified that Linda and William Byes left the bowling alley between 8:00 and 8:30 p.m. CPL Smith testified that he left the bowling alley at around 10:00 p.m., and that he did not see appellant. Because appellant "was making his good-byes" earlier, CPL Smith presumed that appellant "had already left." Defense counsel presented witnesses and suggested in cross-examination and argument that CPL Smith disliked appellant and was jealous of him. In closing argument, trial counsel argued that CPL Smith's "integrity" and professionalism were critical issues for the prosecution.

*Discussion*

■ RCM 912(f)(1)(N), Manual for Courts–Martial, United States (1995 ed.),*

provides: "A member shall be excused for cause whenever it appears that the member ... [s]hould not sit as a member in the interest of having the court-martial free from substantial doubt as to legality, fairness, and impartiality." RCM 912(f)(1)(N) encompasses "both actual bias and implied bias." *United States v. Rome*, 47 MJ 467, 469 (1998). RCM 912(f)(3) provides: "The burden of establishing that grounds for a challenge exist is upon the party making the challenge." Military judges should be "liberal in granting challenges for cause." *Rome*, *supra* at 469.

■ "The test for actual bias [in each case] is whether any bias 'is such that it will not yield to the evidence presented and the judge's instructions.'" *United States v. Napoleon*, 46 MJ 279, 283 (1997), quoting *United States v. Reynolds*, 23 MJ 292, 294 (CMA 1987). "[A]ctual bias is reviewed" subjectively, "through the eyes of the military judge or the court members." *Napoleon*, *supra* at 283, quoting *United States v. Daulton*, 45 MJ 212, 217 (1996).

■ Actual bias is a question of fact. Accordingly, the military judge is given great deference on issues of actual bias, recognizing that he or she "has observed the demeanor of the" challenged party. "[W]e will not overturn the military judge's" denial of a challenge unless there is "a clear abuse of discretion in applying the liberal-grant mandate." *Napoleon*, *supra* at 283, quoting *United States v. White*, 36 MJ 284, 287 (CMA 1993).

■ On the other hand, implied bias is "viewed through the eyes of the public." *Napoleon*, *supra* at 283. "The focus 'is on the perception or appearance of fairness of the military justice system.'" *Id.*, quoting *United States v. Dale*, 42 MJ 384, 386 (1995). There is implied bias "when 'most people in the same position would be prejudiced.'" *Rome*, *supra* at 469, quoting *Daulton*, *supra* at 217. We give the military judge less deference on questions of implied bias. *United States v. Youngblood*, 47 MJ 338, 341 (1997). On the other hand, we recognize that, when there is no actual bias, "implied

---

* This version was in effect at the time of trial. The current version is unchanged.

bias should be invoked rarely." *Rome, supra* at 469.

 We hold that the military judge did not abuse his discretion. There was no evidence of actual bias in this case. *See United States v. Ai,* 49 MJ 1, 5 (1998) (no actual or implied bias based on prior working relationship between officer and enlisted member). COL Sasser's prior professional relationship with CPL Smith was not disqualifying *per se. See Napoleon, supra* at 283. COL Sasser's statement that he "would have faith" in what CPL Smith said reflects no more confidence in his testimony than that of any other witness who testified under oath. COL Sasser's statement that he "had some trust" in CPL Smith was further explained as "confidence"—"if I told him to do something, he did it." In other words, CPL Smith followed orders and performed his duty—a trait expected of any soldier. The entire dialogue with the military judge and counsel for both sides demonstrated that COL Sasser was very concerned with being fair and that he was capable of weighing the evidence objectively and following the military judge's instructions.

Likewise, the record does not reasonably suggest implied bias. To the contrary, it reflects the appearance of fairness. COL Sasser initiated the inquiry into his relationship with CPL Smith. The significant difference between COL Sasser's position as a senior officer and CPL Smith's position as a junior enlisted soldier enhanced the perception that the relationship between COL Sasser and CPL Smith was purely official rather than personal. There is no evidence of a personal or confidential relationship. The temporal gap between their prior professional relationship and the time of trial attenuated any impact of the relationship. Most importantly, COL Sasser's obvious candor, forthright responses, and obvious concern about being fair greatly enhanced the perception that appellant received a fair trial. *See United States v. Ai, supra.*

## Decision

The decision of the United States Army Court of Criminal Appeals is affirmed.