UNITED STATES, Appellee

v.

Robert J. WIESEN, Sergeant
U.S. Army, Appellant

No. 01-0134

Crim. App. No. 9801770

_____

United States Court of Appeals for the Armed Forces

Decided July 10, 2002

<u>Counsel</u>

For Appellant:  Colonel Adele H. Odegard, Lieutenant
Colonel E. Allen Chandler, Jr., Major Imogene M. Jamison,
and Captain Sean S. Park (on brief).

For Appellee:  Colonel Steven T. Salata, Lieutenant Colonel
Paul H. Turney, Major Margaret B. Baines, and Captain Karen
J. Borgerding (on brief).

Military Judge:  Kenneth D. Pangburn

**THIS OPINION IS SUBJECT TO EDITORIAL CORRECTION BEFORE FINAL PUBLICATION.**

## ON PETITION FOR RECONSIDERATION

PER CURIAM:

The Government petitions for reconsideration of this Court's opinion at 56 MJ 172 (2001). In its petition, the Government argues that we (1) improperly shifted the burden of establishing a challenge for cause away from the party making the challenge, contrary to RCM 912(f)(3), Manual for Courts-Martial, United States (2000 ed.), and (2) overlooked facts about the relationship between the challenged member and his subordinates and misapprehended the operational situation at Fort Stewart at the time of trial.

To be successful on a petition for reconsideration, the petitioner must demonstrate that the Court misconstrued or overlooked an issue of law or fact. Rule 32, Rules of Practice and Procedure, United States Court of Appeals for the Armed Forces; United States v. Quillen, 28 MJ 166 (CMA 1989)(pet. for recon. denied); see Fed. R. App. P. 40(a)(2); Lissa Griffin, Federal Criminal Appeals § 7:12 at 7-13 (2002). For the reasons set forth below, we are not convinced that we misconstrued or overlooked any point of law or fact critical to our original opinion. Thus, we deny the petition.

In our original opinion, we held that the military judge abused his discretion in failing to grant a challenge for cause based on implied bias, where one panel member, a Brigade Commander, had a supervisory position over six of the other members, and the resulting seven members made up a two-thirds majority sufficient to convict.  Contrary to the Government's first assertion, we never shifted the burden of establishing a challenge for cause away from the party making the challenge.  As clearly noted in our opinion, we took our action "in accord with this Court's precedent on RCM 912."  56 MJ at 175.  Under that precedent, the burden of establishing grounds for a challenge for cause rests upon the party making the challenge.  RCM 912(f)(3); United States v. New, 55 MJ 95, 99 (2001); United States v. Rolle, 53 MJ 187, 191 (2000); United States v. Warden, 51 MJ 78, 81 (1999); United States v. Giles, 48 MJ 60, 63 (1998).

In this case, the defense challenged a panel member for cause based on implied bias and met its burden by referencing the member's supervisory position over six of the other nine panel members, a fact established during voir dire.  What the Government perceives as burden-shifting is our suggestion that national security exigencies or operational necessities could have been used

3

in rebuttal to demonstrate "that it was <u>necessary</u> for the Brigade Commander to serve on this panel."  56 MJ at 176. That suggestion, however, did not relieve the defense of its burden of first establishing that a ground for challenge existed; rather, it simply noted how the Government might have chosen to respond, if justified by the facts, once the defense met its burden.

Contrary to the Government's second assertion, we did not overlook or misapprehend any facts about command relationships or operational necessities.  Although our opinion did not comment on the specifics of each supervisory relationship or the operational status of each brigade at Fort Stewart, those particular facts were not critical to our finding that the military judge abused his discretion in denying the challenge for cause. Notwithstanding the operational requirements at the time, there remained ample officers at Fort Stewart from which to select a member other than the Brigade Commander.  The Government did not demonstrate otherwise at trial, in its brief, or at oral argument, where government counsel was asked a direct question on this point.

We also reject the Government's implication that we improperly established a <u>per se</u> rule requiring disqualification of a senior member who writes or endorses

4

an efficiency report for a junior member.  In our original opinion, we repeatedly stated just the opposite.  First, we emphasized that "[i]t is well settled that a senior-subordinate/rating relationship does not per se require disqualification of a panel member."  56 MJ at 175.  Later, we stated that "appellate review of this case neither requires application of per se principles nor rejection of [this Court's previous] guidance that implied bias should be invoked rarely."  Id.  Finally, we remarked that our decision was "a contextual judgment," and we underscored the fact that "[t]o address this issue from the standpoint of performance reports misses the point."  Id. at 175-76.  We continue to reject a per se rule.

The Chief Judge's dissent relies primarily on cases involving the Sixth Amendment, without taking into account the limited applicability of that amendment in the military justice system.  The Sixth Amendment right to trial by jury does not apply to courts-martial.  New, 55 MJ at 103; United States v. Kirkland, 53 MJ 22, 24 (2000); United States v. Loving, 41 MJ 213, 285 (1994); United States v. Smith, 27 MJ 242, 248 (CMA 1988); United States v. Kemp, 22 USCMA 152, 154, 46 CMR 152, 154 (1973).  Who may serve on a court-martial is governed instead by Article 25, Uniform Code of Military Justice, 10 USC § 825, which permits the

convening authority – the official who has exercised prosecutorial discretion in the case – personally to select the members of the court-martial panel.  See Kemp, 22 USCMA at 154, 46 CMR at 154.

This Court, in a long line of cases, has consistently defined implied bias in terms of a bias viewed through the eyes of the public.  United States v. Downing, 56 MJ 419, 422 (2002); New, 55 MJ at 99-100; United States v. Armstrong, 54 MJ 51, 53-54 (2000); Warden, 51 MJ at 81; United States v. Rome, 47 MJ 467, 469 (1998); United States v. Napoleon, 46 MJ 279, 283 (1997); United States v. Daulton, 45 MJ 212, 217 (1996); United States v. Glenn, 25 MJ 278, 280 (CMA 1987); United States v. Smart, 21 MJ 15, 19 (CMA 1985); United States v. Harris, 13 MJ 288, 292 (CMA 1982).  Therefore, the Chief Judge's dissent is incorrect in suggesting that an issue of implied bias involving the command relationships among the members of the panel should be viewed through the prism of the Sixth Amendment's requirement for a randomly selected jury of one's peers. The issue is appropriately viewed in the context of public perceptions of a system in which the commander who exercises prosecutorial discretion is the official who selects and structures the panel that will hear the case.

Accordingly, we deny the petition for reconsideration.

<u>United States v. Wiesen</u>, No. 01-0134/AR

CRAWFORD, Chief Judge (dissenting):

This case marks the first occasion that I have dissented from a denial of a petition for reconsideration.  It is an unusual step, but a measure which the majority compels me to take.  In deciding this case, the majority has: (1) rejected Supreme Court precedent; (2) discounted the American public's ability to understand the sworn <u>voir</u> <u>dire</u> responses of officers and non-commissioned officers -- individuals selected pursuant to the stringent requirements of Article 25, Uniform Code of Military Justice (UCMJ), 10 USC § 825; (3) shifted the general burden of establishing a member's disqualification from the defense and now requires the Government to demonstrate to the satisfaction of three judges of this Court why the convening authority chose one member instead of a different one, and in the process turns Article 25 on its head; and (4) ignored the doctrine of separation of powers by judicially substituting its judgment for that of the Legislative and Executive Branches by undercutting the statutory role of the convening authority to select members to serve on court-martial panels, as well as the executive role of the President to promulgate rules governing challenges to the selection of members.  Because the majority's decision is so out-of-step with judicial precedent and practice, will seriously impact the ability of deployed brigades, separate battalions, or units of similar size to try courts-martial, and

leaves the field adrift regarding the proper role of military judges in deciding questions of challenges to court members, I must again dissent.

After the members were sworn and received preliminary instructions, the military judge asked the following questions and received the following responses:

> Has any panel member, or a member of your family, or anyone close to you personally, ever been the victim of an offense similar in any way to any of the charges on the Flyer. If so, please raise your hand.

> No positive responses.

> The accused in this case is presumed to be innocent until his guilt is established by lawful and competent evidence beyond a reasonable doubt. Can each panel member apply this rule of law and vote for a finding of not guilty unless you are convinced beyond a reasonable doubt that the accused is guilty? If you can follow that rule of law, please raise your hand.

> I note a positive response from all panel members.

> On the other hand, can each panel member vote for a finding of guilty if you are convinced under the law that the accused's guilt has been proved by lawful and competent evidence beyond a reasonable doubt? Again, raise your hand if you agree with that proposition.

> I see a positive response from each panel member.

> Does each panel member understand that the burden of proof to establish the accused's guilt rests solely upon the prosecution, that is, the Trial Counsel over there, Captain Sharkey and Captain Witherspoon, representing the Government, and that that burden never shifts to the Defense to establish the accused's innocence?

> Let me repeat that again. Does each panel member understand that the burden to prove guilt rests solely upon the prosecution and never shifts to the Defense to

2

establish the innocence?  Does each panel member understand that?

A positive response from each panel member.

Does each panel member understand, therefore, that the Defense has absolutely no obligation to present any evidence or to disprove the elements of the offenses; does each panel member understand that, if so, raise your hand.

A positive response from each panel member.

Is any panel member in the rating chain, supervisory chain, or chain of command of any other panel member?  If so, raise your hand.

Colonel Williams, who's under your command or rating chain?

MEM[COL WILLIAMS]:  Colonel Mereness is a battalion commander for me, Colonel Rogers is a battalion commander for me, Major Gonsalves is a battalion XO for me.  Colonel Hough is my forward support battalion commander and the first sergeant down at the end is also in my chain.

MJ:  First Sergeant Waters.  Who else?

MEM[COL WILLIAMS]:  Command Sergeant Major Arroyo also is in my BCT.

MJ:  Colonel Mereness, who is under your supervision?

MEM[LTC MERENESS]:  Sir, I just want to indicate that I was underneath Colonel Williams.

MJ: Colonel Hough?

MEM[LTC HOUGH]:  Sergeant Major Arroyo is my sergeant major.

MJ:  Colonel Rogers?

MEM[LTC ROGERS]:  I am subordinate to Colonel Williams and Major Gonsalves is my XO.

MJ:  Command Sergeant Major Peeples, is anyone under your supervision?

    MEM[CSM PEEPLES]:  No one.

    MJ:  Command Sergeant Arroyo?

    MEM[CSM ARROYO]:  No one.

    MJ:  Major Patten, any relation to any of the other panel members?

    MEM[MAJ PATTEN]:  No, sir.

    MJ:  Command Sergeant Major Arroyo, would you feel inhibited or restrained in any way in performing your duties as a court member including the free expression of your views during deliberation by virtue of the fact that Colonel Hough and Colonel Williams hold positions of authority over you?

    MEM[CSM ARROYO]: No.

    MJ:  Do you believe that you can state your views freely and forcefully during deliberations to make your points known, your feelings known about issues without any inhibition?

    MEM[CSM ARROYO]:  That's correct.

    MJ:  First Sergeant Waters, who's in your supervisory chain?

    MEM[1SG WATERS]:  Colonel Williams is my reviewer.

    MJ:  Your reviewer.  So, he reviews your report card when it comes out?

    MEM[1SG WATERS]:  Yes, sir.

    MJ:  Would you feel inhibited or restrained in any way in performing your duties as a court member including free exercise of your views by virtue of the fact that Colonel Williams is your reviewer?

    MEM[1SG WATERS]:  No, sir.

    MJ:  You feel that you can express yourself freely and openly?

    MEM[1SG WATERS]:  Yes, sir.

4

MJ:  Major Gonsalves, who is in your chain?

MEM[MAJ GONSALVES]:  Colonel Rogers is my battalion commander.  Colonel Williams is my brigade commander, sir.

MJ:  Would you feel inhibited or restrained in any way in performing your duties as a court member including free exercise of your views by virtue of the fact that Colonel Rogers is your battalion commander?

MEM[MAJ GONSALVES]:  No, sir.

MJ:  And you're the XO?

MEM[MAJ GONSALVES]:  Yes, sir, I am.

MJ:  Work pretty close together.

MEM[MAJ GONSALVES]:  Yes, sir.

MJ:  Everyday.

MEM[MAJ GONSALVES]:  Yes, sir.

MJ:  Do you get an opportunity to express your own opinion in regard to things, or do you - does he just give you direction to go in and you just go?

MEM[MAJ GONSALVES]:  Sir, I express my own opinions.

MJ:  You do express your opinions?

MEM[MAJ GONSALVES]:  Yes, sir.

MJ:  Do you agree with that, Colonel Rogers?

MEM[LTC ROGERS]:  Without a doubt, sir.

MJ:  Colonel Williams is your brigade commander?

MEM[MAJ GONSALVES]: That's correct, sir.

MJ:  If you disagree with Colonel Williams on something, can you let him know that you disagree?

MEM[MAJ GONSALVES]:  Oh, yes, sir.

MJ:  Have you ever done that before?

5

MEM[MAJ GONSALVES]:  Yes, sir.

MJ:  Colonel Hough, you're a battalion commander?

MEM[LTC HOUGH]:  Yes, sir.

MJ:  Would you feel inhibited or restrained in any way performing your duties by virtue of the fact that Colonel Williams is your brigade commander?

MEM[LTC HOUGH]:  No, sir.

MJ:  Can you express yourself freely to him?

MEM[LTC HOUGH]:  Yes, sir.  Have done so.

MJ:  Done so in the past?  Would you do it again?

MEM[LTC HOUGH]:  Yes, sir.

MJ:  Colonel Mereness, same question.

MEM[LTC MERENESS]:  No problem, sir.

MJ:  No problem?

MEM[LTC MERENESS]:  No, sir.

MJ:  You could express yourself freely and openly?

MEM[LTC MERENESS]:  Yes, sir.

MJ:  And you believe that your views are respected and received?

MEM[LTC MERENESS]:  Yes, sir, without a doubt.

MJ:  Without a doubt. No doubt in your mind?

MEM[LTC MERENESS]:  No, sir.

MJ: Colonel Williams, would you be embarrassed or restrained in any way in the performance of your duties as a court member by virtue of the fact that you hold a position of authority over - a number of members of the panel - who may disagree with you?

MEM[COL WILLIAMS]:  I have no problem, Your Honor.

MJ:  Now, if you had one opinion and you had five or six of your subordinates to disagree with you, can you accept that?

MEM[COL WILLIAMS]:  I have in the past.

MJ:  Colonel Rogers, same question with regard to Major Gonsalves.

MEM[LTC ROGERS]:  I have no problem, sir.

MJ:  Colonel Hough, same question with regard to Sergeant Major Arroyo.

MEM[LTC HOUGH]:  No problem whatsoever.

MJ:  Did I cover everybody?  Did I leave anyone out ...

No additional questions involving command or supervisory relationships were asked collectively.  During the challenge process, MAJ Gonsalves underwent further questioning about his relationship with his battalion commander, LTC Rogers.

Trial defense counsel challenged COL Williams for cause based on implied bias.  The military judge denied the challenge, finding "all [members] indicated that they could express their opinions freely and openly and that they would not be inhibited or unduly influenced by any superior."  After unsuccessful challenges for cause against MAJ Gonsalves and CSM Arroyo, based on implied bias, trial defense counsel peremptorily challenged COL Williams.

Implied bias exists as a separate principle when fairness requires that the potential fact finder be excused.  As defined by our superior court in United States v. Wood, 299 U.S. 123,

134 (1936), implied bias is "a bias attributable in law to the prospective juror regardless of actual partiality." Implied bias is **not** per se an issue "of public perception and the appearance of fairness in the military justice system."[1] United States v. Wiesen, 56 MJ 172, 175 (2001). It is an issue rooted in the Sixth Amendment requirement that "the accused shall enjoy the right to a speedy and public trial, by an impartial jury[.]"[2]

In Smith v. Phillips, 455 U.S. 209, 216 (1982), the Court rejected a claim of implied bias based on the failure of the prosecutor to disclose that one of the jurors had sought employment with the prosecutor. In Phillips, Justice O'Connor, concurring, suggested "extreme situations that would justify a finding of implied bias ... include a revelation that the juror is an actual employee of the prosecuting agency, ... close relative ... of the participants ..., or that the juror was a witness ... [to] the criminal transaction." Id. at 222. Our Court has noted "implied bias should be invoked rarely." United States v. Rome, 47 MJ 467, 469 (1998). However, our Court has

---

[1] This Court has traditionally bottomed challenges for implied bias on RCM 912(f)(1)(N), Manual for Courts-Martial, United States (2000 ed.), which states: "A member shall be excused for cause whenever it appears that the member [s]hould not sit as a member in the interest of having the court-martial free from substantial doubt as to legality, fairness, and impartiality." The discussion which follows this section gives examples of grounds for challenge under subsection (N). Those examples relate to the fairness and impartiality of the individual court-martial members.

[2] The fact that the Sixth Amendment right to trial by jury does not apply to court-martial proceedings, and that members are selected by a convening authority on a "best qualified" basis (Art. 25(d)(2), United States v. New, 55 MJ 95, 103 (2001)), does not require us to jettison Supreme Court precedent and good logic in assessing whether appellant was tried by a fair, impartial jury of his superiors.

invoked implied bias more frequently than its quote in Rome would indicate.  The case at hand is not an example of one of those "extreme situations" warranting a finding of implied bias.

An individual member is tested for his or her personal bias about the case or controversy or an individual accused in order to determine suitability for court-martial duty.  Furthermore, implied bias should not be bottomed on the majority's impression of the American public or that public's perception of a particular brigade commander.  Rather, consideration of implied bias should be judged by the long-standing legal standard of the "reasonable-person test."  A "reasonable-person" is a person "knowing all the facts" and circumstances surrounding the issue in the case, including the rationales of the UCMJ and Manual for Courts-Martial.  See, e.g., United States v. Jones, 55 MJ 317, 321 (2001)(Baker, J., concurring in the result).  Additionally, implied bias is normally applied to an unanticipated situation. It should not be applied to situations that would have been anticipated by the Congress in adopting Article 25 and the President in promulgating the Manual.

For over 100 years, all commissioned officers have been eligible to serve as members of courts-martial.  In the Army, these members could be appointed by "the commanding officer of a brigade, regiment, detached battalion, or corresponding unit[.]" Art. 23(a)(3), UCMJ, 10 USC § 823(a)(3).  Based on the size of

the armed forces during the twentieth century, Congress and the President were well aware that there were many garrisons with separate brigades.  They made no exclusion for commissioned officers who were rated by another member of the panel.  However, Congress did provide that an enlisted member could not sit if the member was assigned to the same unit as the accused, i.e., a company-type unit or below.

The President certainly anticipated that servicemembers would work for each other and, therefore, rate each other.  That relationship was not considered a basis of challenge for cause, and this Court should be powerless to remove or modify the Presidential rules on challenges for cause unless there is an unanticipated bias that would prevent a fair hearing.

This is not an instance when a person hears post-trial of a potential disqualifier, as in Phillips, supra.  Here, the potential disqualifier was raised at trial, and the potential members were questioned while under oath by the judge and the parties.  The potential members unequivocally stated that they could be impartial.  The judge was present to observe their demeanor under cross-examination and to evaluate their answers.  Based on the high esteem in which the public holds the military (see the Harris Poll #50, October 10, 2001 at http://www.harrisinteractive.com/harris_poll/index.asp?PollYear=2001), it is hard to imagine that allowing these members to sit

10

would offend the public at large.  By disregarding the observations of the trial judge, the majority creates an amorphous standard and leaves the system at the mercy of a subjective ("I know it when I see it") test, rather than a reasonable person test.  This leaves trial judges rudderless in guiding the court to reach a proper conclusion, and undermines the finality of judgment, as well as the public confidence in the military justice system.

The majority's arguments are reminiscent of those made, and rejected, in Wood, supra, and Dennis v. United States, 339 U.S. 162 (1950).  Dennis was convicted after he failed to appear before the Committee on Un-American Activities of the House of Representatives for criminal contempt.  His jury was primarily composed of United States government employees.  The Supreme Court rejected Dennis's claims of implied bias based on the fact that federal employees would not vote to acquit him and run the risk of being branded disloyal or having their government employment terminated.  The Supreme Court held:  "A holding of implied bias to disqualify jurors because of their relationship with the Government is no longer permissible."  Id. at 171.

Our High Court has repeatedly emphasized that an accused is always free to show the existence of actual bias, either during trial or in some instances during post-trial proceedings.  See Phillips, supra; Remmer v. United States, 347 U.S. 227 (1954);

11

Dennis, supra.  Appellant had ample opportunity to show the actual bias of COL Williams, or any other member, at trial. Yet, he chose not to ask COL Williams one single question about his command relationship with other members after the military judge received assurances from all in COL Williams's command and supervisory chains that there would be no improper influence exerted.  The majority refuses to recognize how a reasonable member of the general public would examine all of the circumstances, including the members' statements under oath, the historical background of the UCMJ, the specific reasons for challenges that exist in the UCMJ and Manual but not in the Federal Rules of Criminal Procedure, and the reservation of implied bias for rare or exceptional circumstances.  The record of trial in this case clearly establishes that the members were fully capable of deciding appellant's innocence or guilt based upon the evidence presented to them.

Article 25(d)(2) instructs the convening authority to detail members who are "best qualified for the duty by reason of age, education, training, experience, length of service, and judicial temperament."  Article 25 does not tell the convening authority that he must consider military necessity, deployment, or other operational exigencies when selecting court-martial members.  But see Rome, 47 MJ at 467; United States v. Youngblood, 47 MJ 338 (1997).  The burden is on defense counsel

12

to show the particular members selected by the convening authority should not sit because of bias. It is not incumbent upon the Government to show that military necessity required the convening authority to select certain members to the exclusion of others.

The logical extension of the majority's view will make it very difficult for a deployed convening authority of a detached brigade, separate battalion, or units of similar size to convene a court-martial. This not only defeats the flexibility for which the UCMJ has provided since its inception, but also undermines good order and discipline in the armed services. If the commander of a brigade, separate battalion, or units of similar size of soldiers currently deployed in Asia wanted to convene a court-martial, he or she may practicably be precluded from doing so without going outside the unit or changing venue. Either may impact on the mission.

This Court has generally supported the proposition that professional relationships, such as we find in the case at hand, do not justify removal of a member for implied bias. See, e.g., United States v. Ai, 49 MJ 1 (1998)(unanimous court held that routine official or professional relationships between court-martial members and witness in that particular case are not per se disqualifying); United States v. Bannwarth, 36 MJ 265 (CMA 1993)(senior-subordinate relationship between court members is

not automatically disqualifying of senior member); United States v. Porter, 17 MJ 377 (CMA 1984)(friendship with the trial counsel was not per se disqualifying); accord United States v. Warden, 51 MJ 78 (1999); United States v. Murphy, 26 MJ 454 (CMA 1988).  In the same vein, we have refused to disqualify a court member because that member's friends have been victims of crimes similar to the one with which an accused is charged.  See United States v. Henly, 53 MJ 488 (2000); United States v. Velez, 48 MJ 220 (1998).

The majority's opinion also puts trial judges in a unique "box."  Military judges now must assume the role we have always left to competent counsel and ferret out remote relationships between court members and aspects of the case.  Are military judges now required to ask presumably competent counsel on the record if they are challenging a certain member for implied bias, and if not, why not?  Is the onus on the military judge to extract a statement of waiver of a challenge for implied bias? Finally, and most disturbing, how long will it be before we see a challenge to the military judge for implied bias, because, inter alia, the judge is perceived to be "tough on sentencing," and such a perception would not sit well with the American public?

Accordingly, the issue is not whether other officers whom the convening authority could have chosen to sit on appellant's

court-martial were available at Fort Stewart.  I am sure they were.  But unlike the majority, I do not shift the burden to the Government to show this.  The sole issue is whether COL Williams was disqualified because of his bias toward the offenses or the accused.  The facts show he was not.

The denial of reconsideration leaves the rudderless ship of "implied bias" adrift on the high seas, searching for a port of call before it sinks to the bottom of the Marianas Trench.  This Court has left judge advocates and others trying courts-martial, as well as convening authorities who have always looked to Article 25 for advice, now guessing about member selection and challenges.  Surely, court-martial members, both past and present, who read the majority's decision will wonder why the majority believes that the American public would question their integrity and their oath to uphold the Constitution and due process of law.

I would grant reconsideration; apply Supreme Court precedent; define the term "implied bias" within its historical Sixth Amendment context while applying the principle to statutes and rules promulgated by the Congress and Executive Branch for governing the armed forces; restore the burden to defense counsel to show bias of individual court members, like every other judicial body in this country; and provide military practitioners with the rudder needed to steer the ship.

15

United States v. Wiesen, No. 01-0134/AR

SULLIVAN, Senior Judge (dissenting):

I dissent again.  See United States v Wiesen, 56 MJ 172, 181 (2001) (Sullivan, S.J., dissenting).  In my view, the majority has effectively established a per se rule that a brigade commander of a significant number of the other members of a panel is disqualified from sitting on that panel.

I would grant the Government's petition for reconsideration and also have full oral argument on the issue of whether this Court's decision made new law in placing the burden on the Government to justify such a commander sitting on a military jury.  Any further appellate proceedings in this case would benefit from such additional analysis from our Court.