# UNITED STATES AIR FORCE COURT OF CRIMINAL APPEALS

## UNITED STATES

**v.**

## Staff Sergeant JAMES R. SPEAR II
## United States Air Force

## ACM 38537

## 30 July 2015

Sentence adjudged 24 October 2013 by GCM convened at Buckley Air Force Base, Colorado. Military Judge: Grant L. Kratz.

Approved Sentence: Bad-conduct discharge, confinement for 18 months, and reduction to E-3.

Appellate Counsel for the Appellant: Major Nicholas D. Carter; Major Isaac C. Kennen; and Philip D. Cave, Esquire.

Appellate Counsel for the United States: Major Daniel J. Breen; Captain Thomas J. Alford; and Gerald R. Bruce, Esquire.

Before

ALLRED, HECKER, and TELLER
Appellate Military Judges

OPINION OF THE COURT

This opinion is issued as an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 18.4.

---

ALLRED, Chief Judge:

The appellant was convicted at a general court-martial, consistent with his pleas, of one specification of negligent dereliction of duty, three specifications of larceny of military property, and one specification of housebreaking, and, contrary to his plea, of an additional specification[1] of larceny of military property, in violation of Articles 92, 121,

---

[1] For this specification of larceny, the appellant pled guilty to the lesser offense of stealing military property of a value equal to or less than $500.00, but, after a litigated trial, the panel found him guilty of the original offense which alleged the property was valued at more than $500.00. The panel also found the appellant not guilty of

and 130, UCMJ, 10 U.S.C. §§ 892, 921, 930. The panel of officer members sentenced the appellant to a bad-conduct discharge, confinement for 18 months, and reduction to E-3. The convening authority approved the sentence as adjudged.

Before us, the appellant argues (1) the government violated his Fifth Amendment[2] right to due process by prosecuting him before a court-martial panel of five members whose verdict was not required to be unanimous, (2) the military judge abused his discretion in denying the defense challenge of a court member for cause, (3) his plea of guilty to dereliction of duty was improvident, and (4) the military judge abused his discretion in refusing to give instructions concerning co-conspirator or accomplice testimony. Finding no error prejudicial to the substantial rights of the appellant, we affirm.

## *Background*

The appellant was a member of the Security Forces. On four occasions between May 2012 and February 2013, he entered a Security Forces warehouse, without authorization, for the purpose of stealing military property. During one of the entries, the appellant took a backpack, batteries, flashlight, gloves, and a mosquito net. Another time, he removed two rifle cases. On a third occasion, he stole a backpack. And on the fourth, he took gear bags and plates of body armor.

On 11 February 2013, with no military purpose, the appellant used his government travel card to buy gas and food. The next day, he misused the card to make similar purchases. On 8 April 2013, he misused the card a third time for a meal at a restaurant.

Further facts relevant to this case are addressed below.

## *I. Composition of the Court-Martial*

The appellant now contends for the first time that his Fifth Amendment right to due process was violated because he was convicted by a court-martial panel of only five members and because their verdict did not have to be unanimous.[3] The appellant cites Supreme Court cases discussing due process relative to the size and unanimity of civilian juries, and he argues those decisions stand for the proposition that "there is some point at which [court-martial panels are] too small to be considered constitutionally reliable for

---

another specification of larceny of military property and of communicating a threat, in violation of Articles 121 and 134, UCMJ, 10 U.S.C. §§ 921, 934.

[2] U.S. CONST. amend. V.

[3] This court previously addressed a related issue in *United States v. Daniel*, ACM 38322 (A.F. Ct. Crim. App. 1 April 2014) (unpub. op.), *aff'd without opinion*, 73 M.J. 473 (C.A.A.F. 2014), *cert. denied* (12 January 2015). The appellant contends that adverse decision is distinguishable from his case because it dealt with verdicts by six-member panels, not five-member panels.

criminal conviction purposes, especially if they are not required to be unanimous in their decision."

In *Ballew v. Georgia*, 435 U.S. 223, 245 (1978), the Supreme Court found a trial by jury of less than six members deprives a defendant of the right to trial by a jury as contemplated by the Sixth Amendment.[4]  The decision was based on empirical studies showing that "the purpose and functioning of the jury in a criminal trial is seriously impaired, and to a constitutional degree, by a reduction in size to below six members." *Id.* at 239.  Subsequently, in *Burch v. Louisiana*, 441 U.S. 130 (1979), the Court held that conviction by a non-unanimous six-member jury also fails to comply with the Sixth Amendment, saying:

> [M]uch the same reasons that led us in *Ballew* to decide that use of a five-member jury threatened the fairness of the proceeding and the proper role of the jury, lead us to conclude now that conviction for a nonpetty offense by only five members of a six-person jury presents a similar threat to preservation of the substance of the jury trial guarantee and justifies our requiring verdicts rendered by six-person juries to be unanimous.

441 U.S. at 138.

The appellant's argument in this case focuses on due process under the Fifth Amendment, contending that the Supreme Court's decisions in *Ballew* and *Burch* are based in due process.[5]  He also notes the Supreme Court's statement that, in the military context, determining whether the Due Process Clause applies to a facet of the military justice system requires an evaluation of "whether the factors militating in favor [of, as contended here, the right to a larger panel] are so extraordinarily weighty as to overcome

---

[4] The *Sixth Amendment* reads:

> In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defence.

U.S. CONST. amend. VI.  The Amendment's provision as to trial by jury is made applicable to the states by the Fourteenth Amendment.  *Duncan v. Louisiana*, 391 U.S. 145 (1968).

[5] Our superior court has repeatedly held that the Sixth Amendment rights regarding a jury trial do not apply to courts-martial.  *See, e.g., United States v. McClain*, 22 M.J. 124, 128 (C.M.A.1986); *United States v. Curtis*, 32 M.J. 252, 267–68 (C.M.A. 1991) (rejecting a similar argument to the appellant's within the context of a death penalty case); *United States v. Wiesen*, 57 M.J. 48, 50 (C.A.A.F. 2002); *United States v. Leonard*, 63 M.J. 398, 399 (C.A.A.F. 2006); *United States v. Easton*, 71 M.J. 168, 175 (C.A.A.F. 2012) (citing *Ex parte Quirin*, 317 U.S. 1, 39 (1942)).

the balance struck by Congress" between the needs of the military and the rights of service members. *Weiss v. United States*, 510 U.S. 163, 177–78 (1994) (quoting *Middendorf v. Henry*, 425 U.S. 25, 44 (1976)) (internal quotation marks omitted). In the appellant's view, this issue of panel size and unanimity should be subjected to judicial review because the "balance struck by Congress" has radically changed[6] and, in light of the concerns expressed by the Supreme Court regarding juries, have unbalanced the military justice system to the extent that permitting trials before a five-member panel not required to be unanimous is no longer sustainable under the Constitution. He also notes that, prior to 1921, Congress generally required 13 members unless convening a panel of that size would cause "manifest injustice to the service." *See Martin v. Mott*, 25 U.S. 19, 34–35 (1827). Given that history and the Supreme Court precedent discussed above, the appellant urges this court to find that Congress' decision to authorize trial by five non-unanimous panel members is in conflict with the appellant's constitutional right to a larger panel.

The *Weiss* standard is the appropriate test to determine whether a due process violation has occurred in the court-martial setting. *United States v. Vazquez*, 72 M.J. 13, 18 (C.A.A.F. 2013). In *Weiss*, the Supreme Court noted that:

> Congress, of course, is subject to the requirements of the Due Process Clause when legislating in the area of military affairs, and that Clause provides some measure of protection to defendants in military proceedings. But in determining what process is due, courts must give particular deference to the determination of Congress, made under its authority to regulate the land and naval forces, U.S. Const., Art. I, § 8. . . .
>
> Congress has plenary control over rights, duties, and responsibilities in the framework of the Military Establishment, including regulations, procedures, and remedies related to military discipline. Judicial deference thus is at its apogee when reviewing congressional decisionmaking in this area. Our deference extends to rules relating to the rights of servicemembers: Congress has primary responsibility for the delicate task of balancing the rights of servicemen against the needs of the military. . . . We have adhered to this principle of deference in a variety of contexts where, as here, the constitutional rights of servicemen were implicated.

---

[6] Among others, he cites to recent changes in the purpose and procedures of Article 32, UCMJ, 10 U.S.C § 832, investigations, the removal of convening authorities' discretion during post-trial review of sexual assault cases, and the lack of a statute of limitations for sexual assault offenses.

*Weiss*, 510 U.S. at 176–77 (second omission in original) (citations and quotation marks omitted).[3]

Judicial deference is "at its apogee" when an appellant is challenging the authority of Congress to govern military affairs. *Weiss*, 510 U.S. at 177; *Solorio v. United States*, 483 U.S. 435, 447 (1987); *see also Middendorf v. Henry*, 425 U.S. 25, 43 (1976). It is the appellant's heavy burden to demonstrate that Congress' determinations about panel size and unanimity should not be followed. *See id.*; *Weiss*, 510 U.S. 181. He must show the factors weighing in favor of his interest are so "extraordinarily weighty" that they overcome the balance struck by Congress in making these determinations. *See id.* at 179. The appellant here has failed to do so.

To support his argument, the appellant contends the Supreme Court's rationale in *Ballew* is wholly applicable to the military justice system in that small groups of military members are subject to the same problems identified by that court. As did two federal courts that reviewed a similar claim by an appellant during a collateral attack on his court-martial, we disagree. In *Sanford v. United States*, a federal district judge declined to adopt and apply the empirical data from *Ballew* to the military context based on substantial distinctions between the military and civilian legal systems, including that military panel members are selected based on their qualifications and that each panel member is selected from the accused's own profession (that of military service). 567 F. Supp. 2d 114, 119–20 (D.D.C. 2008) (citing *United States v. Wolff*, 5 M.J. 923, 925 (N.C.M.R. 1978); *United States v. Guilford*, 8 M.J. 598, 602 (A.C.M.R. 1979)). During the appeal of that decision, the court of appeals also faulted the appellant for "recasting *Ballew* as a due process case that would apply directly to courts-martial as a preexisting constitutional requirement," when, in fact, "there is no prevailing Fifth Amendment standard on this issue with which to require military conformity." *Sanford v. United States*, 586 F.3d 28, 35 (D.C. Cir. 2009).

We find the reasoning and conclusions of these courts convincing. The appellant has failed to demonstrate that Fifth Amendment due process requires a court-martial panel to have six or more members who must be unanimous. With our deference to Congress at its apogee, we find the appellant has failed to meet his heavy burden of showing the existence of any extraordinarily weighty factors that would overcome the balance struck by Congress between the needs of the military and the rights of service members.

## II. Challenge of Court Member

The appellant alleges the military judge erred by denying a defense challenge for cause against a potential panel member, Captain (Capt) SS. The appellant contends Capt

SS should have been excused under both the actual and implied bias standards. We disagree.

Rule for Courts-Martial (R.C.M.) 912(f)(1)(N) provides that a member shall be excused for cause whenever it appears that the member "[s]hould not sit as a member in the interest of having the court-martial free from substantial doubt as to legality, fairness, and impartiality." "This rule encompasses challenges based upon both actual and implied bias." *United States v. Elfayoumi*, 66 M.J. 354, 356 (C.A.A.F. 2008) (citing *United States v. Clay*, 64 M.J. 274, 276 (C.A.A.F. 2007)).

"The test for actual bias is whether any bias is such that it will not yield to the evidence presented and the judge's instructions." *United States v. Terry*, 64 M.J. 295, 302 (C.A.A.F. 2007) (quoting *United States v. Napoleon*, 46 M.J. 279, 283 (C.A.A.F. 1997)) (internal quotation marks omitted). Because "[t]he existence of actual bias is a question of fact," we "provide the military judge with significant latitude in determining whether it is present in a prospective member. *Id.* (citing *United States v. Warden*, 51 M.J. 78, 81 (C.A.A.F. 1999)). Actual bias is reviewed "subjectively, through the eyes of the military judge or the court members." *Warden*, 51 M.J. at 81 (quoting *Napoleon*, 46 M.J. at 283) (internal quotation marks omitted). A "challenge based on actual bias is essentially one of credibility, and because the military judge has an opportunity to observe the demeanor of court members and assess their credibility on voir dire, a military judge's ruling on actual bias is afforded deference." *United States v. Briggs*, 64 M.J. 285, 286 (C.A.A.F. 2007) (quoting *United States v. Daulton*, 45 M.J. 212, 217 (C.A.A.F. 1996)) (internal quotation marks omitted).

Implied bias is "viewed through the eyes of the public, focusing on the appearance of fairness." *United States v. Bagstad*, 68 M.J. 460, 462 (C.A.A.F. 2010) (quoting *United States v. Clay*, 64 M.J. 274, 276 (C.A.A.F. 2007)) (internal quotation marks omitted). Therefore, appellate courts employ an objective standard when reviewing a military judge's decision regarding implied bias. *United States v. Strand*, 59 M.J. 455, 458 (C.A.A.F. 2004). We review issues of implied bias "under a standard less deferential than abuse of discretion but more deferential than de novo." *Id.* (quoting *United States v. Miles*, 58 M.J. 192, 195 (C.A.A.F. 2003)) (internal quotation marks omitted). In reviewing challenges for cause under the implied bias standard, military judges are required to follow the "liberal grant" mandate, which "supports the UCMJ's interest in ensuring that members of the military have their guilt or innocence determined 'by a jury composed of individuals with a fair and open mind.'" *United States v. James*, 61 M.J. 132, 139 (C.A.A.F. 2005) (quoting *United States v. Smart*, 21 M.J. 15, 18 (C.M.A. 1985)). "[I]n the absence of actual bias, where a military judge considers a challenge based on implied bias, recognizes his duty to liberally grant defense challenges, and places his reasoning on the record, instances in which the military judge's exercise of discretion will be reversed will indeed be rare." *Clay*, 64 M.J. at 277.

In the present case, after the military judge denied the defense challenge for cause, trial defense counsel challenged Capt SS peremptorily—and she was removed from the court panel. For this reason alone, the appellant's claim is meritless.

Prior to 2005, R.C.M. 912(f)(4) permitted appellate review of a denied challenge for cause even if the appellant successfully removed that panel member through use of a peremptory challenge, so long as trial defense counsel stated on the record that he would have exercised the defense's peremptory challenge against another member if the challenge for cause had been granted. *See United States v. Leonard*, 63 M.J. 398, 402–03 (C.A.A.F. 2006). In 2005, however, the President promulgated amendments to the *Manual for Courts-Martial* that significantly altered this rule. Now, "[w]hen a challenge for cause has been denied[,] the successful use of a peremptory challenge by either party, excusing the challenged member from further participation in the court-martial, *shall preclude further consideration of the challenge of that excused member upon later review*." R.C.M. 912(f)(4) (emphasis added). Under the current rule, because the appellant removed Capt SS from the panel through the use of his peremptory challenge, further review of the military judge's denial of the appellant's challenge for cause is precluded.

Moreover, even assuming our review of the matter is not precluded, we find no error. The appellant argues that Capt SS should have been excused for two reasons: first, because she might have been distracted by a personal scheduling conflict; and second, because of responses she provided when asked about threats and violence.

*Scheduling Conflict.* During group voir dire, the military judge asked the panel, "[D]oes anyone know of anything of either a personal or professional nature, which would cause you to be unable to give your full attention to these proceedings throughout the trial?" Several members responded affirmatively, including Capt SS. When the military judge followed up with Capt SS individually, she indicated that she was a single parent with potential day care issues. She responded, however, that with adequate notice, she could make arrangements to avoid any conflict.

The appellant's senior defense counsel (SDC) explored the day care issue further. He asked Capt SS, "[W]ould it potentially get you upset about the situation if you had to sit on a court-martial?" She replied, "Oh, no, sir." The SDC then asked, "You'd still be able to focus on the facts, focus on the evidence?" And she answered, "Yes, sir."

*Responses Regarding Threats and Violence.* During individual voir dire, the SDC asked Capt SS whether she would be able sit as an impartial court member in a case involving threats or violence. She responded candidly, "I don't know." When the SDC probed further, Capt SS expressed a potential concern for her own safety and that of her children—she believed it possible that, if the appellant was a violent offender, he might seek retribution against those serving on his panel. Capt SS assured the court, however,

that she would be able to fairly consider the evidence at trial, and render a verdict of not guilty if the appellant's guilt was not proved beyond a reasonable doubt. She likewise indicated a belief that she could objectively consider the evidence and render a fair sentence.

In ruling upon a defense challenge for cause against Capt SS based upon actual and implied bias, the military judge declared:

> [Capt SS] has certainly indicated that she could consider all of the evidence. . . . She certainly was being thoughtful with her answers, but I did not see an emotional reaction from her.

> I don't believe her family situation comes into play. She's already exhibited an ability to have other people pick up her children. There's no indication that she would be distracted by that situation. She seems very capable of planning for it.

> While she stated that discussion of such things, certainly discussion of threats, generally, makes her uncomfortable, I'm not sure that it's not a bad thing for people to be uncomfortable. In fact, one could question the wisdom of people being comfortable in sitting in judgment of others. I don't believe that her language or her body language indicated any sort of bias.

> I understand the liberal [grant] mandate[7] as well as the implied bias standard. I don't believe that a reasonable individual looking in on these proceedings could believe that [Capt SS]'s participation in the deliberation room would create an appearance of unfairness.

> Therefore, the defense challenge for cause based on actual or implied bias against [Capt SS] is denied.

In our view, the military judge properly considered the defense challenge based upon implied as well as actual bias. He recognized his duty to liberally grant defense challenges, and he placed his reasoning on the record. We find the military judge did not abuse his discretion in denying the challenge for cause.

---

[7] The record of trial indicates the military judge stated, "I understand the liberal grand mandate . . . ." We find that to be merely a typographical error.

*III. Providence of Plea*

The appellant was charged with willful dereliction of duty for misusing his government travel card on divers occasions. He pled and was found guilty of the lesser offense of negligent dereliction of duty. On appeal, he claims his plea of guilty to this offense was improvident because the military judge failed to address the defense of ignorance or mistake of fact.

The military judge properly advised the appellant as to the elements of the lesser offense to which he was pleading guilty, as follows:

> The first element is that you had a certain prescribed duty, that is; to refrain from using your government travel card for unauthorized purposes.
>
> The second is that you knew or reasonably should have known of the assigned duty.
>
> And three . . . that within the continental United States, on divers occasions between on or about 1 February 2013 and on or about 15 April 2013, you were, through neglect, derelict in the performance of that duty by negligently failing to refrain from using your government travel card for unauthorized purposes.

The definitions the military provided the appellant included the following:

> "Dereliction" is defined as a failure in duty, a shortcoming, or delinquency.
>
> "Negligently" means an act or failure to act by a person under a duty to use due care, which demonstrates a lack of care, which a reasonably prudent person would have used under the same or similar circumstances.
>
> That an individual reasonably should have known of duties may be demonstrated by regulations, manuals, customs, academic literature, testimony of persons who have held similar or related positions, or similar evidence.

During the providence inquiry, the appellant expressly agreed that the elements and definitions given him by the military judge correctly described what he did. He declared under oath that he knew, through briefings and training, that the government

travel card issued to him was to be used "only for approved expenses, such as for TDYs, PCS's, or while on orders" and that he had a duty to refrain from using his card on any other occasions. He went on to describe three separate situations in which he negligently and without authorization used the card to purchase gas and food. He explained further:

> [W]hen I made these transactions I was not in a TDY or PCS status, or in any other—other status that would authorize me to use my GTC. Instead of exercising due care and paying for my expenses with a personal card, I carelessly removed a card from my wallet, and paid with my [government travel card].
>
> No one made me do this. I did not believe I was authorized to do so. And if I had exercised greater care and caution, I could have avoided misusing the [government travel card].

When asked if he could have avoided using the government travel card if he had wanted to, the appellant responded "yes."

Before us, the appellant now claims the military judge erred by failing "to ensure that his use of the [government travel card] was not based on a mistaken belief that he was actually using a personal credit card." We disagree.

During a guilty plea inquiry, the accused must establish not only that he believes he is guilty but also that the factual circumstances support that plea. *United States v. Goodman*, 70 M.J. 396, 399 (C.A.A.F. 2011). If, at any time during the proceeding, "an accused sets up matter inconsistent with the plea, . . . the military judge must either resolve the apparent inconsistency or reject the plea." *Id.* (quoting Article 45(a), UCMJ, 10 U.S.C. § 845(a)) (internal quotation marks omitted). Once the military judge has accepted the guilty plea and entered findings of guilty, an appellate court will not set them aside unless it finds a substantial basis in law or fact for questioning the plea. *United States v. Inabinette,* 66 M.J. 320, 322 (C.A.A.F. 2008); *see also* Article 45(a), UCMJ*,* 10 U.S.C. § 845(a). To rise to the level of inconsistency contemplated by Article 45(a), UCMJ, the matters raised at trial must have reasonably raised the question of a defense or must have been inconsistent with the plea in some respect. *United States v. Roane*, 43 M.J. 93, 98 (C.A.A.F. 1995). In determining on appeal whether there is a substantial inconsistency, this court considers the "full context" of the plea inquiry. *United States v. Smauley*, 42 M.J. 449, 452 (C.A.A.F. 1995).

"[I]t is a defense to an offense that the accused held, as a result of ignorance or mistake, an incorrect belief of the true circumstances such that, if the circumstances were as the accused believed them, the accused would not be guilty of the offense."

R.C.M. 916(j)(1). Generally, for crimes not involving specific intent, willfulness, knowledge, or premeditation, the ignorance or mistake must be both honest (actual) and reasonable. *Id.* Thus, even if the appellant honestly and mistakenly believed he had used his personal credit card, that belief had to be objectively reasonable under the circumstances. *See id.* Furthermore, the ignorance or mistake of fact cannot be based on the accused's carelessness or his negligent failure to discover the true facts. *See United States v. True*, 41 M.J. 426 (C.A.A.F. 1995).

Here, we find no substantial basis, either in law or fact, to question the appellant's plea. The appellant admitted he acted negligently on these occasions, stating he had failed to exercise due care when he removed the card from his wallet. He also described his actions as careless. Under these circumstances—including the appellant's misuse of the government travel card on three separate occasions over a two month period—we are convinced that the defense of ignorance or mistake was not reasonably raised during the plea inquiry and the appellant's responses in the providence inquiry did not set up a matter in substantial conflict with his plea.

## IV. Instruction to Members

Airman First Class (A1C) RS and Senior Airman (SrA) GD were fellow Security Forces members who provided testimony against the appellant during findings. In discussing findings instructions, trial defense counsel requested that the military judge provide co-conspirator and accomplice instructions pertaining to these individuals.[8] The trial counsel objected and the military judge declined to give the instructions, finding neither of the individuals was culpably involved in any of the crimes with which the appellant was charged. On appeal, the appellant claims the military judge erred by not giving an accomplice instruction.

Whether a military judge properly instructs the court members is a question of law we review de novo. *United States v. Hibbard*, 58 M.J. 71, 75 (C.A.A.F. 2003). A

---

[8] Trial defense counsel offered no specifics as to the wording of their proposed instructions. Presumably counsel desired the Military Judges' Benchbook instruction regarding accomplices, which reads in pertinent part:

> A witness is an accomplice if he/she was criminally involved in an offense with which the accused is charged. The purpose of this advice is to call to your attention a factor specifically affecting the witness's believability, that is, a motive to falsify his/her testimony in whole or in part, because of an obvious self-interest under the circumstances.
>
> (For example, an accomplice may be motivated to falsify testimony in whole or in part because of his/her own self-interest in receiving (immunity from prosecution) (leniency in a forthcoming prosecution) (_____).)

Department of the Army Pamphlet (D.A. Pam.) 27-9, *Military Judges' Benchbook*, ¶ 7-10 (1 January 2010).

military judge's decision not to provide an instruction is reviewed for an abuse of discretion. *United States v. Maxwell*, 45 M.J. 406, 424 (C.A.A.F. 1996). "[T]he military judge has substantial discretion in deciding on the instructions to give and whether [a defense-requested] instruction is appropriate." *United States v. Miller*, 58 M.J. 266, 270 (C.A.A.F. 2003). "This discretion must be exercised in light of correct principles of law as applied to the facts and circumstances of the case." *Id.* Denial of a requested instruction is error if the instruction is (1) correct, (2) not substantially covered in the main instruction, and (3) "'is on such a vital point in the case that the failure to give it deprived [the] defendant of a defense or seriously impaired its effective presentation.'" *Id.* (alteration in original) (quoting *United States v. Zamberlan*, 45 M.J. 491, 492–93 (C.A.A.F. 1997)). For the military judge's refusal to instruct the members to be error, all three prongs of the test in *Miller* must be satisfied.

In the present case, the appellant has failed to meet the third prong of the *Miller* test. That is, on the particular facts of this unique case, the requested instruction was not on such a vital point that the failure to give it deprived the appellant of a defense or seriously impaired effective presentation. After the appellant entered his pleas, only four matters were litigated during findings. The appellant prevailed on three of those matters.[9] The members rendered only one finding contrary to the appellant's own pleas—and in that instance, the testimony and credibility of A1C RS and SrA GD were not material to the outcome.[10] Under these circumstances, the lack of an accomplice instruction did not deprive the appellant of a defense and did not seriously impair the effective presentation of the defense case.

---

[9] In two instances—specifications alleging larceny of rifle magazines and communicating a threat, in violation of Articles 121 and 134, UCMJ, 10 U.S.C. §§ 921, 934—the appellant pled and was found not guilty. In the third instance—a specification alleging larceny of rifle cases of a value greater than $500.00, in violation of Article 121, UCMJ, 10 U.S.C. § 921—the appellant was found, in accordance with his plea, guilty only of the lesser offense of larceny of property equal to or less than $500.00.

[10] In the single instance where a finding of guilty exceeded his pleas, the appellant had pled guilty to the lesser offense of stealing military property consisting of a gear bag (singular) and body armor plates, of a value equal to or less than $500.00—and the members found him guilty of the greater offense alleging theft of gear bags (plural) and property having a value more than $500.00. In our view, the testimony of the witnesses in question—Airman First Class (A1C) RS and Senior Airman (SrA) GD—could have had little impact on the outcome. Neither witness offered any evidence as to the value of the stolen bags—indeed SrA GD provided no testimony regarding stolen bags whatever—and the testimony of A1C RS that he saw the appellant steal a single bag was consistent with the appellant's own admission that he stole just one bag.

*Conclusion*

The approved findings and sentence are correct in law and fact, and no error prejudicial to the substantial rights of the appellant occurred. Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c). Accordingly, the approved findings and sentence are **AFFIRMED**.

FOR THE COURT

STEVEN LUCAS
Clerk of the Court

ACM 38537